[Crim. No. 22944. May 10, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTIN EDWARD MARSH, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Tom Stanley, Deputy State Public Defender, for Defendant and Appellant.

Hilbert P. Zarky and Fred Okrand as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Carol Wendelin Pollack and Cynthia Sonns Waldman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, J.—**

I

PROCEDURAL OUTLINE

Defendant appeals the judgment of conviction entered upon his pleas of nolo contendere to kidnaping for ransom with bodily harm (Pen. Code, § 209)[1] eight counts of forcible rape while acting in concert with another person (§§ 261, 264.1); three counts of oral copulation, while acting alone and two counts while acting in concert with another person (§ 288a, subds. (c), (d)); one count of sodomy in concert with another person (§ 286, subd. (d)); two counts of robbery (§ 211); use of a deadly weapon (knife) in the commission of all of foregoing offenses (§ 12022, subd. (b)); and three counts of assault with a deadly weapon (§ 245, subd. (a)).

Defendant's pleas were entered pursuant to a plea bargain in which the People agreed to dismiss a simple kidnaping count. Although when he pleaded defendant stated that at the time of sentencing he intended to move to strike the ransom and bodily harm allegations in the aggravated kidnaping charge, the record does not show that the ability to do so was a condition of the plea bargain. The court indicated some uncertainty about its power to strike the allegations, but left the question open at that time. No promises were made as to punishment, and defendant was informed that the maximum possible term was 163 years in the state prison plus an additional sentence of life without possibility of parole. Defendant was also informed that commitment to the California Youth Authority (YA) was a possibility only if the court were to strike portions of the kidnaping charge. Based upon the parties' stipulation, the court reviewed the preliminary hearing transcript for determination of the factual basis of the pleas and found there was such a basis.

---

[1]All section references are to the Penal Code unless otherwise indicated.

Eventually defendant was sentenced on the section 209 count to life imprisonment without possibility of parole. Other sentences were ordered to be served concurrently.

## II

### The Crimes

The preliminary hearing transcript reveals that defendant, then 16, and Billy, then 19, approached Anne, Michael and Robin as they were getting in their car near the beach shortly after midnight on April 11, 1980. Defendant and Billy drew knives and demanded the victims' valuables. The victims had no money, but gave up their watches and rings. Defendant and Billy led them at knifepoint to a grassy area where they forced the boys to lie down and questioned them about getting some money, kicking and stabbing them while talking. Billy told defendant to watch Michael and Robin and ordered Anne to remove her clothes. She complied after Billy threatened to kill her friends. Billy raped her. Billy and defendant then led the three victims to another area where Billy again raped Anne while defendant guarded Michael and Robin and talked to them about getting some money for Anne's release. Defendant then said, "Let me have a turn." Defendant raped Anne who was also forced to orally copulate both Billy and defendant.

Michael and Robin were released after being told to have $300 the next day for Anne's release. Although Billy made most of the arrangements for the ransom, defendant joined the conversation to make sure Michael and Robin knew where to leave the money.

Defendant and Billy led Anne to another area where each raped her again and Billy sodomized her. They again forced her to copulate each of them orally. They then walked about a mile, blindfolded Anne and ultimately put her in a van where they continued their sexual attacks on her. The following day, defendant went to pick up the ransom, but returned empty-handed because he was afraid that police might be in the area. Anne was released that afternoon. Her ordeal had lasted 16 hours.

### III

### The Sentencing Hearing

At the probation and sentencing hearing defendant moved to strike the allegations of ransom and bodily harm in the kidnaping count in furtherance of justice pursuant to section 1385. In the alternative, he asked the court to stay sentence on the kidnaping count. The purpose of both requests was to

make him eligible for commitment to YA, a person with a life sentence not being so eligible. (Welf. & Inst. Code, § 1731.5, subd. (a).) After lengthy argument and consideration of the probation report, as well as psychological reports and evaluations,[2] the court denied the motion to strike the aggravating portions of the kidnaping count. As noted, it sentenced defendant to life imprisonment without possibility of parole and ordered the sentences on the other counts to run concurrently.

IV

Issues

Defendant, who had just turned 16 at the time of the offenses, makes a number of challenges to the sentence.[3] He contends: (1) the court erred in failing to refer him to YA for an evaluation and report pursuant to Welfare and Institutions Code section 707.2; (2) the court abused its discretion in denying his motion under section 1385 to strike the ransom and bodily harm allegations in the kidnaping count; (3) the sentence of life without possibility of parole constitutes cruel or unusual punishment; (4) a sentence of life without possibility of parole may not legally be imposed on a minor who was under the age of 18 at the time of the offense; (5) the sentence of life without possibility of parole denies defendant equal protection; and (6) his pleas were invalid.

Although we find no basis for reversal on the asserted invalidity of defendant's pleas, we do find that reversal is required for the court's error in failing to refer defendant to YA for an evaluation and report pursuant to Welfare and Institutions Code section 707.2. We do not address defendant's challenges to the sentence of life without possibility of parole that had been imposed, since it is by no means clear that he will receive that sentence again. Upon resentencing the court will have the benefit of the YA report and recommendation and of this decision eliminating the uncertainty it had about the range of sentencing options available through use of the power to

[2]The reports included a lengthy report from an independent psychiatrist, a report from defendant's YA parole officer, a report by a psychologist with the Ventura County Corrections Services Agency, and a report of interviews with supervisors at the juvenile hall where defendant was being confined. The reports were by no means unanimous. Some focused on unfavorable factors, such as defendant's history of alcohol and drug-related offenses with repeated unsuccessful attempts at home placement and placement in treatment programs. Other reports were more favorable in noting defendant's intelligence, his good behavior during his juvenile hall confinement and his troubled home life. One of these reports recommended YA commitment, others did not.

[3]Defendant would not have been eligible to have been tried as an adult and sentenced to state prison had he committed the offenses two weeks earlier, before he turned 16 on April 1, 1980. (See Welf. & Inst. Code, § 707.)

strike some or all of the enhancing allegations in furtherance of justice pursuant to section 1385.

## V

### DISCUSSION

#### A. *Validity of Pleas*

■ Defendant contends his pleas of nolo contendere were invalid because (1) the plea bargain was illusory since there was insufficient evidence to support the simple kidnaping count that was dismissed, (2) they were induced by fundamental misrepresentations as to the consequences of the plea to kidnaping for ransom with bodily harm, and (3) he did not have fair notice of what constituted bodily harm.

There are a number of problems with these contentions. Among these are: First, defendant did not obtain a certificate of probable cause—ordinarily a prerequisite for appellate review of the validity of the pleas. (*People* v. *Holland* (1978) 23 Cal.3d 77, 84 [151 Cal.Rptr. 625, 588 P.2d 765]; *People* v. *Musante* (1980) 102 Cal.App.3d 156, 158 [162 Cal.Rptr. 158]; *People* v. *Pinon* (1979) 96 Cal.App.3d 904, 909 [158 Cal.Rptr. 425]; § 1237.5.) Second, defendant failed to move to withdraw his pleas in the trial court. (*People* v. *Massie* (1967) 66 Cal.2d 899, 910 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *Pinon* (1973) 35 Cal.App.3d 120, 126 [110 Cal.Rptr. 406]; *People* v. *Barajas* (1972) 26 Cal.App.3d 932, 937 [103 Cal.Rptr. 405]; § 1018.) Third, defendant's claim of an illusory plea bargain is based on a faulty premise. While it is true that a defendant is entitled to the benefits for which he bargained (see, e.g., *People* v. *Collins* (1978) 21 Cal.3d 208, 214-215 [145 Cal.Rptr. 686, 577 P.2d 1026]), defendant makes the unwarranted assumption that a nolo or guilty plea is invalid unless made for a consideration which would support a contract. If that were the law a defendant could not "plead to the sheet," simply in the hope that the court will show leniency. In any event, defendant got exactly what he bargained for—dismissal of the simple kidnaping charge. There was no condition that the charge not be vulnerable to a motion to dismiss under section 995 of the Penal Code—a motion which, incidentally, was never made.

#### B. *Referral to Youth Authority*

■ Defendant contends that the trial court erred in failing to refer him to the YA for an evaluation pursuant to Welfare and Institutions Code section 707.2. Defendant asserts that despite his statutory ineligibility for YA commitment because of his plea to aggravated kidnaping, a YA evaluation

was nevertheless required by the plain language of section 707.2, which states in pertinent part: "No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the Youth Authority for evaluation and report pursuant to this section . . . ."[4] Defendant argues that such an evaluation would have been particularly useful in this case by enabling the court to exercise its discretion more intelligently and might have persuaded it to strike the allegations that rendered him ineligible for YA.

We have never decided whether section 707.2 requires a YA evaluation even when the minor appears to be ineligible for YA placement. (See *People v. Black* (1982) 32 Cal.3d 1, 10, fn. 7 [184 Cal.Rptr. 454, 648 P.2d 104]; *In re Jeanice D.* (1980) 28 Cal.3d 210, 214 [168 Cal.Rptr. 455, 617 P.2d 1087].) Although some Courts of Appeal have held that despite such ineligibility, a trial court may refer the minor for evaluation and report (*People v. Grisso* (1980) 104 Cal.App.3d 380, 386 [163 Cal.Rptr. 547]; *People v. Garcia* (1981) 115 Cal.App.3d 85, 109 [171 Cal.Rptr. 169]), none has held that it must do so.

Both the language and the history of the statute, however, indicate that it should be interpreted to require a referral even when the minor seems to be ineligible for YA commitment. Welfare and Institutions Code section 707.2, as enacted in 1975, provided for referral to YA for evaluation and report only for "those persons eligible for commitment to Youth Authority."[5] When section 707.2 was amended in 1976 (Stats. 1976, ch. 1069, § 1,

---

[4]Section 707.2, as amended in 1982, provides in full: "Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the Youth Authority for evaluation and report pursuant to this section.

"The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor."

The last paragraph was added in 1982.

[5]The 1975 statute provided in full: "*Except as provided in Sections 1731.5 and 1737.1,* no minor who was under the age of 18 years when he committed any criminal offense, and who has been found not a fit and proper subject to be dealt with under the juvenile court law pursuant to Section 707, shall be sentenced to the state prison, except upon petition filed pursuant to Article 5 (commencing with Section 1780) of Division 2.5. *Of those persons eligible for commitment to the Youth Authority, prior to sentence the court may remand such persons to the custody of the California Youth Authority not to exceed 90 days for the purpose of evaluation and report.*

"With the exception of past or present wards of the authority, no person shall be returned

p. 4808), that condition was removed. This change virtually compels a finding of legislative intent to require a YA evaluation even when the minor is presently ineligible for commitment. Given the trial court's power under section 1385—see our discussion in part V.C., below—such an evaluation would not be futile. It would also be useful to a court in determining whether to exercise the discretion granted it under a 1983 amendment to Welfare and Institutions Code section 1731.5, subdivision (c), to order that a youthful offender be housed at YA even though he has been committed to the Department of Corrections.

 We conclude that Welfare and Institutions Code section 707.2 required the trial court to refer defendant to YA for evaluation and that its error in failing to do so requires reversal. Although, as previously noted, the court had a number of other reports and evaluations before it at the time of sentencing—some of which were favorable, some not—most were not directed at the precise issue of whether defendant should have been committed to YA instead of state prison. A positive YA report might well have tipped the scales in defendant's favor. As a more beneficial result appears reasonably possible upon resentencing after a YA evaluation and report and our clarification of the scope of the court's powers under section 1385, we need not decide whether the error in sentencing defendant without a YA evaluation was reversible per se. (Cf. *People* v. *Rojas* (1962) 57 Cal.2d 676, 682-683 [21 Cal.Rptr. 564, 371 P.2d 300].)

## C. *Power to Strike Enhancements in Furtherance of Justice*

 Since, at the time of resentencing, defendant will have another opportunity to move to strike the enhancing allegations in the kidnaping charge, we do not address the specifics of his claim of an abuse of discretion in the denial of his motion to strike. We note, however, that although at the time of sentencing the trial court did not repeat its previously expressed doubts about its power to strike, the matter was somewhat clouded by our decision in *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328].

The sentencing in this case preceded our decision in *People* v. *Williams* (1981) 30 Cal.3d 470 [179 Cal.Rptr. 443, 637 P.2d 1029], which clarified the scope of the court's power to strike under section 1385 in furtherance of justice. In *Williams* we held that trial courts have the power under section 1385 to strike jury findings of special circumstances that would require the defendant to be sentenced to life without possibility of parole. In reaching

---

to the court by the authority unless he has been remanded to the Youth Authority for diagnosis and report, and personally evaluated." (Italics added; Stats. 1975, ch. 1266, § 6, p. 3326.)

that result we reviewed a series of cases dealing with section 1385, beginning with *People* v. *Burke* (1956) 47 Cal.2d 45 [301 P.2d 241]. In *Burke,* we had considered whether section 1385 could be used to strike a prior conviction which had been admitted by the defendant and which would have increased the required sentence. In holding that section 1385 could be so used, we stated: "The authority to dismiss the whole includes, of course, the power to dismiss or 'strike out' a part." (*Id.,* at p. 51.) Following *Burke,* we upheld the use of section 1385 to dismiss an entire action after trial and conviction where the dismissal is based on insufficiency of the evidence although, in fact "there is sufficient evidence of guilt, however weak." (*People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 504 [72 Cal.Rptr. 330, 446 P.2d 138].) Thereafter, use of section 1385 was also approved to strike jury findings of weapons use that would have enhanced a sentence by five years. (*People* v. *Dorsey* (1972) 28 Cal.App.3d 15 [104 Cal.Rptr. 326].)

In *People* v. *Tanner, supra,* 24 Cal.3d 514, however, we had held that section 1385 could not be used to strike a firearm use finding in order to place an otherwise ineligible defendant on probation, because the Legislature had precluded such an exercise of judicial discretion by expressly prohibiting probation for persons convicted of specified crimes while using a firearm. (§ 1203.06.) In *Williams,* we noted that *Tanner* had not purported to overturn *Burke, Howard* or *Dorsey* and concluded section 1385 was applicable in the absence of specific legislative indication to the contrary. Finding no such specific prohibition comparable to that in *Tanner,* we held that section 1385 was applicable to a special circumstance finding requiring a sentence of life imprisonment without possibility of parole.[6]

Under the reasoning of *Williams,* section 1385 is also available for use in the present case to strike the ransom and bodily harm allegations to reduce the required sentence for the kidnaping charge to allow YA eligibility. There is no specific statutory prohibition comparable to that in *Tanner.* The ransom and bodily harm findings are similar in effect to prior conviction and weapons use findings in that they require an enhanced sentence. They differ from special circumstances only in that they are not stated separately from the substantive charge. It would be anomalous if this variation called for a different result since all that is missing is the placement of the enhancing allegations in a separate paragraph rather than in the one which describes the basic kidnaping offense.[7]

---

[6]That result was not a foregone conclusion. Two members of the court dissented in *Williams* on the ground that the case was controlled by *Tanner.*

[7]Section 209 provides in full: "(a) Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, or any

In discussing the scope of section 1385, we do not mean to suggest that the court's only choices are to strike both the bodily harm and ransom allegations for YA eligibility or to deny the motion entirely and sentence defendant to prison for life without possibility of parole. Although those were the only alternatives urged at the time of sentencing, we note that there is a broad range of sentencing options between those extremes. For example, the court could strike only the bodily harm allegation, thereby reducing the kidnaping sentence to life *with* possibility of parole, which carries a minimum parole eligibility term of seven years. (§ 3046.) Of course, this minimum term could be lengthened by sentencing defendant to a specified period of years through the court's use of its discretionary powers under section 667.6, subdivision (c), to sentence defendant to fully consecutive terms on the sex offense convictions. (See *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686].)

In sum, the court has a wide range of sentencing choices short of imposing life imprisonment without possibility of parole.

D. *Cruel and Unusual Punishment*

Defendant claims that, in any event, the constitutional prohibitions against cruel and/or unusual punishment forbid sentencing a minor to life imprisonment without possibility of parole. We fully recognize the cogency of the arguments adduced in support of that proposition, noting that in this case they are strengthened by two considerations: (1) the anomaly that for reasons explained in *People* v. *Davis* (1981) 29 Cal.3d 814 [176 Cal.Rptr. 521, 633 P.2d 186] and *People* v. *Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289], this penultimate penalty cannot be imposed on minors found guilty of murder, however aggravated; and (2) that in this particular case the minor was just two weeks over the line which "qualified" him for treatment in the adult criminal system. (See fn. 2, *ante.*)

■ Nevertheless, in obedience to the mandate that courts should not decide constitutional questions unless compelled to do so (*People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 481, 484-485 [82 Cal.Rptr. 724, 462 P.2d 580]; *Palermo* v. *Stockton Theaters, Inc.* (1948) 32 Cal.2d 53, 65-66

person who aids or abets any such act, is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm, or is intentionally confined in a manner which exposes such person to a substantial likelihood of death, or shall be punished by imprisonment in the state prison for life with the possibility of parole in cases where no such person suffers death or bodily harm.

"(b) Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole."

[195 P.2d 1]), we leave for another day the question of the constitutional validity of a sentence which may never be imposed in this case: as already noted, on resentencing after a section 707.2 referral, defendant will have an opportunity to renew his motion to strike, the court will be aided by the YA evaluation and report and will have the backing of this opinion concerning its power to use section 1385 to fashion an appropriate sentence.[8]

The judgment of conviction is affirmed. The matter is remanded for resentencing in accord with the views expressed herein.

Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., and Arabian, J.,* concurred.

---

[8]A number of mitigating circumstances were mentioned in the reports submitted to the court. A comprehensive psychological evaluation reviewed defendant's family history and noted that he was an only child who had had little contact with his father, an alcoholic who died in 1970. His mother had psychological problems while she herself was growing up and also after defendant's birth. She was unable to set appropriate limits with defendant and became an overly strict disciplinarian when he was about eight. Defendant was on his own a lot since his mother was always working at one or two jobs, despite suggestions by school officials that she spend more time with defendant. Defendant's behavior problems became serious when he was 12. He began running away from home, using drugs and alcohol and committing theft and drug offenses.

The United States Supreme Court recently described similar mitigating factors in *Eddings v. Oklahoma* (1982) 455 U.S. 104 [71 L.Ed.2d 1, 102 S.Ct. 869], albeit in the context of reversing a death penalty imposed upon a 16-year-old without proper consideration of the mitigating evidence: ". . . [Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective and judgment' expected of adults . . . . [¶] Even the normal 16-year-old customarily lacks the maturity of an adult. In this case Eddings was not a normal 16-year-old; he had been deprived of the care, concern and paternal attention that children deserve. . . . All of this does not suggest an absence of responsibility for the crime . . . . Rather, it is to say that just as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in sentencing." (*Id.* at pp. 115-116 [71 L.Ed.2d at pp. 11-12].)

*Assigned by the Chairperson of the Judicial Council.