Filed 5/5/21  P. v. Jackson CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C086434 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CR638) |
| v. | |
| MALACHI MICAH JACKSON, | |
| Defendant and Appellant. | |

Sentenced to a stipulated eight-year state prison term pursuant to a plea agreement, defendant Malachi Micah Jackson contends his plea was involuntary for two reasons: (1) because the trial court denied his request for a continuance to obtain an expert's report, he was compelled to forgo an arguably valid claim of self-defense (which required the report to substantiate it), and (2) his attorney misadvised him he was facing a life sentence if he went to trial.  The Attorney General responds:  (1) the appeal should be dismissed for lack of appellate jurisdiction, (2) the trial court's denial of a continuance was within its discretion because defense counsel was not diligent in preparing for trial,

1

and (3) defendant's plea should not be set aside because he cannot establish prejudice or ineffective assistance of counsel.

Observing that defendant did not challenge the order denying a continuance by petitioning for a writ, and did not move to withdraw his plea when trial counsel obtained the expert's report before sentencing, we requested supplemental briefing from the parties on whether defendant's claim of error was forfeited. We later granted defendant leave to file a supplemental brief in which he challenged the trial court's imposition of assessments under Penal Code section 1465.8 and Government Code section 70373 without consideration of his ability to pay, and asserted the imposition of the Penal Code section 1202.4 fine without consideration of his ability to pay violated the Eighth Amendment prohibition against excessive fines as well as California and federal constitutional provisions on equal protection.

Having considered the parties' original and supplemental briefs, we now conclude we have jurisdiction to decide defendant's appeal, but defendant's assorted claims are without merit. We therefore affirm defendant's conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

*The charges and the underlying facts*

An information filed January 26, 2017, after the preliminary hearing, charged defendant with attempted murder (count I; Pen. Code, §§ 664/187, subd. (a))[1], mayhem (count II; § 203), and assault with a deadly weapon, a knife (count III; § 245, subd. (a)(1)). As to all counts, the information alleged defendant personally and intentionally inflicted great bodily injury (GBI) (§ 12022.7, subd. (a)). The information also alleged all counts were serious and violent felonies (§§ 667.5, subd. (c), 1192.7, subd. (c)).[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] The original complaint also alleged a prior strike, but the information does not.

2

The information stated that the sentencing range on count I was five, seven, or nine years; on count II, two, four, or eight years; and on count III, two, three, or four years. The GBI enhancements, if found true, would add three years on each count. The strike allegations, if found true, would double the total sentence.

The testimony at the preliminary hearing indicated that on the night of October 21, 2016, Red Bluff police officers found the victim on the ground, bleeding heavily and with apparently life-threatening injuries. He said his roommate (defendant) had texted him to get him to come out of his bedroom, then stabbed him with an open folding knife after charging him from three feet away. According to the victim, he was unarmed. He fought back, but when he saw that his lip was hanging off his face he ran outside to get help. He was hospitalized and surgery was performed on him. The surgeon said the victim had suffered five stab wounds and two lacerations.[3]

According to the police report, defendant told the police the victim struck first and then pinned him down, so he grabbed a knife and stabbed the victim to get the victim off him. However, the victim described defendant as the aggressor, telling a story consistent with the evidence at the preliminary hearing.

The surgeon enumerated the victim's wounds as a stab wound to his temple penetrating into the skull, a laceration to his lower lip that almost severed the lip from his face, a stab wound to his jaw penetrating into the jawbone, a stab wound to his left chest cavity injuring the left lung, a stab wound to the left side of his abdomen, a stab wound that entered his upper chest cavity and penetrated downward into his abdominal cavity through the diaphragm, narrowly missing the liver, and a laceration to the inside of his

---

[3] At the close of the preliminary hearing, the prosecutor asked the trial court to take judicial notice of medical records, which were under seal. After the parties stipulated the records could be used for evidentiary purposes even though unsealed, the court ordered them unsealed and provided to both counsel. The records were unsealed on June 12, 2017, and the defense received them at that time.

3

right wrist. The surgeon thought defendant could not have inflicted those wounds while pinned under the victim.

*Procedural history before the entry of plea*

On or around February 21, 2017, Kenneth Miller of the Public Defender's Office was appointed to represent defendant.

On April 10, 2017, attorney Erin O'Toole-McNally (McNally) substituted in as defense counsel.

On April 28, 2017, McNally filed an ex parte request to hire Julie LaHorgue as a private investigator.

On May 3, 2017, the trial court denied the ex parte request because defendant had not submitted a financial declaration of indigency.

On June 7, 2017, McNally moved to compel discovery of the victim's medical records. McNally asserted that during informal discovery, the district attorney's office stated they had received the medical records and they should be lodged in the court's file. The prosecutor had proposed addressing the medical records issue at the final pretrial conference (calendared for July 3, 2017), but this would not allow McNally sufficient time to prepare for trial. According to McNally's supporting declaration, a local rule in Tehama County required defendants either to enter a plea or to confirm for trial at the final pretrial conference, and McNally did not believe the court would allow further pretrial conferences at this stage. McNally also asserted that, if convicted, defendant could receive a life sentence.[4]

---

[4] McNally did not attach a copy of the alleged local rule, and appellate counsel has not done so. The Attorney General represents that he could not locate such a rule, "but does not dispute that the record and the arguments of counsel suggest that it is the practice in Tehama County Superior Court."

On June 12, 2017, the trial court granted the motion. The minute order states that the medical records are unsealed.

On July 3, 2017, McNally reapplied for the appointment of LaHorgue and submitted a financial declaration from defendant. McNally asserted that none of defendant's prior attorneys had conducted any investigation, a number of witness statements needed to be taken, and LaHorgue was requested because McNally had worked with her for a number of years. McNally also asserted defendant faced a maximum exposure of life in prison if convicted of attempted murder.

On July 20, 2017, the trial court again denied the request for appointment of a private investigator, finding defendant had still not shown indigency.

On September 7, 2017, McNally moved in camera for the appointment of Thomas Resk, M.D., at public expense as a forensic pathologist. McNally's supporting declaration stated that Dr. Resk would need to review the victim's medical records, photographs of injuries of defendant and the victim, and discovery in the case, to offer an expert opinion whether the injuries to both men were consistent with defendant's self-defense claim.

On September 22, 2017, the trial court granted the motion to appoint Dr. Resk.

On November 3, 2017, McNally filed a motion to continue the final settlement conference and jury trial, calendared for hearing on November 17, 2017. Her supporting declaration averred:

When she substituted into the case on March 31, 2017, she found that defendant's prior attorneys had not done any investigation. There were no medical records in the file

for the victim.  Defendant's charges included a prior strike, and he faced a potential life sentence.[5]

Counsel tried twice to obtain the medical records informally.  The district attorney's office responded that it had already provided all discovery to the defense, and the records were in the court's file pursuant to a subpoena duces tecum.  Finally, counsel filed a motion to compel, which was heard on June 12, 2017, and granted.  Counsel received 843 pages of medical records.  It took some time to review these and to decide on further action as to investigation and an expert witness.

When counsel requested the appointment of LaHorgue as a private investigator, she thought an application for indigent defense services was unnecessary because defendant was previously represented by the public defender.  She had worked with LaHorgue previously and did not know who the public defender's investigator was.  Once defendant's family obtained funding to hire LaHorgue, they worked to locate a forensic pathologist before seeking funding for his appointment because they wanted to present him with as much information as possible.

Immediately after the trial court granted the motion for funding for a forensic expert, counsel contacted a forensic pathologist and provided documents to him.  However, he had indicated he could not furnish a report before the final pretrial conference.  Although his initial impression was that the material he had seen was consistent with defendant's self-defense claim, he was still reviewing documents and had requested supplemental information, without which he could not offer an opinion or prepare a report.  Counsel and her investigator were working diligently to gather and forward the requested documents.

---

[5]  As mentioned above, although a prior strike was charged in the original complaint, it was no longer charged in the information, which was filed well before McNally substituted into the case.

Until counsel had completed her investigation and consulted her expert, she could not competently advise defendant on the risks and benefits of accepting an offer or going to trial. Her investigation should be concluded soon. Counsel requested a rescheduling of the final pretrial conference to December with trial dates in January 2018.

When counsel appeared at the final pretrial conference, she raised the concerns detailed above.[6] The prosecution presented three offers, which could expose defendant to either one or two strikes, and a maximum prison term on initial sentencing of anywhere between 10 and 12 years. It would be malpractice to advise defendant whether to accept any of these offers before receiving the expert's report. The delay in obtaining the medical records, which should have been discovered to the defense at the outset, had made it impossible for counsel to competently advise her client so that he could make an informed decision at a final pretrial conference. Furthermore, to force the matter into trial when counsel would have less than a month to receive and consider the expert's report would deprive defendant of effective assistance of counsel at trial. Motions in limine were due November 17, though counsel had not completed her investigation or received the expert's report. Rescheduling the matter for a final pretrial conference in late December and trial dates in January 2018 would give counsel the time to properly represent defendant.

*The pretrial conference of November 17, 2017, and defendant's entry of plea*

On the morning of November 17, 2017, the trial court stated that this was the final pretrial conference, and even if the court were to grant a continuance it would not continue the pretrial conference; therefore, this was the last day to reach a stipulated agreement. The court noted it had read McNally's declaration and asked if she had anything further to argue; she said no.

---

[6] McNally did not give the date of this conference, and there is no transcript of such a conference in the record.

7

The prosecutor pointed out that the defense had not said when the expert's report would be done and said he could not understand why the expert needed four months to do it.

McNally said it would be done by the end of the month "if the People cooperate with discovery requests." She did not have "the emergency responder records," "ambulance records," or defendant's pre-booking hospital records.

The prosecutor asserted that McNally could have requested those documents on her own at any point. The trial court agreed. McNally replied that the HIPAA (Health Insurance Portability and Accountability Act) laws would make it extremely difficult for her to obtain such records by subpoena. The prosecutor responded that she could easily get her client's consent to obtain his jail records, and the subpoena duces tecum was just as available to her as to the People.

The trial court ruled:

"As to the request for continuance, Ms. [] McNally was retained March 31st of this year. Even if . . . well, the medical records were unsealed on June 12th of this year and it wasn't until September 7th, three months later[,] that the motion for the expert was filed and the expert fees were allowed on September 22nd, which is an additional two months, and now you are talking about records that could have been subpoenaed from the very beginning. [¶] I am not going to continue it for further pretrial conference. If you want to try to negotiate a resolution today you can, that is totally up to you, but this is your last opportunity to do that. After today, it will simply be, if there is a resolution, an open plea with no stipulated sentence. [¶] Nonetheless, the People are, I guess, concerned about the content of the counsel's declaration and the possibility of an appellate issue, have agreed or are not opposing the continuance. [¶] I will continue the matter for a setting in January. This will be the last continuance."

That afternoon, the parties returned to court. Defendant entered a plea of no contest to count II (mayhem) for a stipulated eight-year upper term, with the remaining

8

counts and allegations dismissed on motion of the People. Sentencing was scheduled for January 4, 2018.

*The expert's report*

On December 22, 2017, Dr. Resk filed his report, which McNally asked the trial court to make part of the record at sentencing. The report, dated December 15, 2017, stated that Dr. Resk had reviewed defendant's booking sheet, the police report, videos and photographs of defendant in custody, videos of the victim, and the victim's hospital records. Based on those materials, Dr. Resk opined: "None of the [victim]'s stab wounds were directed to [his] center of mass, i.e. his heart area, which in my forensic autopsy experience of over 5800 autopsies including many homicidal stab wound victims, indicates more of a flailing attempt by the knife-holder as a possible defensive tactic by a smaller person with a knife fighting a physically more imposing, larger person without a knife. In [the] hospital [the victim] had no classic defensive sharp force wounds to his hands, forearms, lower extremities or feet. The flailing knife attack does not reflect in my opinion any advanced planning on the part of [defendant]. Indeed, [defendant] may have been attempting to evade blunt force traumatic injuries which he sustained subsequently[,] documented in body photographs of [defendant] by the Red Bluff Police Department on the night of the incident as well as several days later after contusions had time to fully develop. Numerous blunt force traumatic injuries to [defendant] are evident upon my review of these photographs, including [injuries to both arms, back/shoulders/scapula, abdomen/chest, head, and scrotum]. [¶] All of these red-blue abrasions and contusions evident in the photographs are recent and synchronous in occurrence without any evidence of yellow-brown discoloration or aging to these blunt force traumatic injuries. [¶] In summary, based on my forensic pathology training and over 40 years practicing as an American Board of Pathology board-certified Forensic Pathologist, I can find no persuasive evidence to support a pre-planned malicious attack

by [defendant] on [the victim]. I hold these opinions to a reasonable degree of medical and scientific certainty."

*Sentencing*

On January 4, 2018, the trial court imposed the stipulated sentence, to which both counsel submitted. The court stated that it had read and considered the expert's report, as well as the probation report and "the report filed by [McNally] on December 22nd," (which is not in the record).

*Notice of appeal*

On January 25, 2018, defendant filed a notice of appeal and a request for certificate of probable cause. As grounds for the request, McNally recapitulated the arguments from her motion for continuance and added: "The judge told counsel he would grant a continuance, but would not allow any further negotiations to resolve the case because this was the final pre-trial. Counsel made a record that she could not competently advise the defendant of the benefits and risks of an offer vs[.] trial due to not having the expert's evaluation of the case." The trial court granted a certificate of probable cause.

## DISCUSSION

### I

### *The appeal is properly before us*

The Attorney General contends we should dismiss the appeal because it is taken from a nonappealable order, namely the order denying (in part) defendant's request for a continuance. (See *People v. Kaanehe* (1977) 19 Cal.3d 1, 9 [denial of request to continue trial already underway nonappealable].) The Attorney General acknowledges that the trial court issued a certificate of probable cause, but asserts that a certificate of probable

10

cause cannot make a noncognizable issue cognizable on appeal. (Cf. *People v. Hoffard* (1995) 10 Cal.4th 1170, 1178.)[7]  We are not persuaded.

Section 1237.5 authorizes appeals from pleas based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings," if the appellant obtains a certificate of probable cause.  Trial counsel's application for the certificate stated "grounds going to the legality of the proceedings":  defendant was coerced into entering his plea when the trial court prevented him from ascertaining whether he had a viable defense before deciding if he would go to trial and risk a much longer sentence on conviction.  Defendant did not appeal from the order denying the continuance; he appealed from the imposition of sentence pursuant to an allegedly involuntary plea.  His appeal comes squarely within section 1237.5.

II

*Defendant's failure to move to withdraw his plea after he received the expert's report*
*forfeits his claim of error*

Having found that we have jurisdiction to hear the appeal, we must decide whether defendant may challenge his sentence even though he did not move to withdraw his plea when he received the expert's report well before the date of sentencing.  We conclude that his failure to do so forfeits his attack on the sentence.  We also conclude that defendant cannot show this failure resulted from ineffective assistance of counsel.

An appellate court will not generally consider claims of error that could have been raised in the trial court, but were not.  (*People v. Turner* (2002) 96 Cal.App.4th 1409, 1412 (*Turner*).)  Under section 1018, a defendant may move to withdraw his or her plea

---

[7] Defendant failed to address this contention in his reply brief.  In the Attorney General's supplemental brief, he states that he is withdrawing this argument, but without explaining whether he no longer thinks it valid.  We therefore choose to address the argument for the guidance of the parties.

"at any time before judgment." (*Turner, supra*, at p. 1412.)  Therefore, if the defendant knew before judgment that he or she could show the plea was involuntary, but did not raise that claim by a motion to withdraw the plea, the claim is forfeited on appeal.  (*Id.* at pp. 1412-1413; see *People v. Marsh* (1984) 36 Cal.3d 134, 140; *People v. Pinon* (1973) 35 Cal.App.3d 120, 125-126; *People v. Barajas* (1972) 26 Cal.App.3d 932, 937.)

Here, defendant sought a continuance on the ground that counsel could not properly advise defendant on the risks and benefits of going to trial until she had the expert's report in hand, because she could not know until then whether a self-defense theory at trial would be viable.  When the continuance was denied, counsel evidently advised defendant to enter a plea because it assured him of a lower sentence than he would be likely to obtain after conviction at trial.  But when the expert's report, supporting counsel's self-defense theory, came in over a week before the date of sentencing, defendant did not move to withdraw his plea—even though the facts which supposedly made the plea involuntary (counsel's uncertainty whether a self-defense claim could be supported) no longer existed, and the new facts gave ample grounds to withdraw the plea.  Under these circumstances, the *Turner* forfeiture rule applies.

In defendant's supplemental opening brief, he does not cite any authority showing why his failure to withdraw his plea before judgment does not forfeit his appellate claim of error.  He asserts instead that the expert's report "merely formalized what trial counsel had already been advised prior to the plea," based on counsel's statement in her motion for continuance that Dr. Resk's " 'initial impressions' " were consistent with a self-defense claim.  This is a departure from the position asserted in his opening brief, where defendant wrote:  "The trial court's apparent impatience with [defendant's] counsel was a 'myopic insistence upon expeditiousness in the face of a justifiable request for delay,' which insistence, but for a mere few more weeks to obtain a highly relevant report, forced [defendant] to plead to a crime for which, as the expert's report later

12

demonstrated--and which [in]fact counsel had already suggested to the trial court--he had a viable defense of self defense."

Faced with an argument that his appellate claim might be forfeited based on the failure to seek withdrawal of his plea, defendant writes: "[T]he report 'merely formalized what trial counsel had already been advised prior to the plea.' " Defendant's argument in his supplemental brief thus defeats the argument presented in the opening brief.

If counsel thought her preliminary discussions with Dr. Resk were enough to show the self-defense theory was viable, she would have had no reason to seek a continuance. She could have advised defendant on the date of the last pretrial conference to reject the prosecution's offers and rely on self-defense at trial. For counsel instead to seek a continuance, representing to the trial court that she did not have confidence in her theory of trial when she actually did, would have been bad-faith conduct, though we will not presume absent evidence that counsel acted in bad faith.

In defendant's supplemental reply brief, he attempts to distinguish *Turner* and other case law cited by the Attorney General on the facts. This effort is in vain. Even if Case A can be distinguished from Case B on the facts, Case A may still state the rule of law that controls in Case B. For the reasons already given, *Turner* and the decisions it cites do so here.

As a fallback argument, defendant asserts trial counsel was ineffective. However, his only basis for this claim is unsupported by the record.

In defendant's original and supplemental briefing, he asserts "it is apparent from the record" that counsel wrongly led him to believe he was facing a life sentence if he went to trial—a claim that is strictly incorrect. While the record discloses counsel on earlier occasions represented to the trial court, incorrectly, that defendant was facing a life sentence, there is nothing in the appellate record that discloses the advice counsel gave defendant during discussions on November 17 when defendant agreed to a stipulated disposition. We know nothing of counsel's advice to defendant, defendant's

13

understanding of that advice, or how the advice provided affected his decision making regarding the plea. Perhaps these facts could be ferreted out in a habeas corpus proceeding, but an adequate predicate is not established for such a claim in this appellate proceeding.

We cannot conclude counsel was ineffective in failing to move to withdraw defendant's plea because defendant cannot show prejudice from being sentenced according to the plea. The eight-year sentence he received under the plea was significantly less than any possible sentence after conviction at trial, and notwithstanding Dr. Resk's report, the substance of which was already known to his counsel, we cannot find on this record a reasonable likelihood that his self-defense claim would have prevailed.

Defendant's claims of error are thus not supported by the record.

III

*Imposition of fines and fees*

At sentencing the trial court imposed a $40 court operations fee (§ 1465.8), a $30 criminal conviction fee (Gov. Code, § 70373), and a $2,400 restitution fine (§ 1202.4). Based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), and other authorities, defendant asserts that fees and fines cannot be imposed without a determination of a defendant's ability to pay. As no such determination was made in his case, he argues the exactions must be stayed and the case remanded for a hearing on his ability to pay.

In *Dueñas, supra*, 30 Cal.App.5th 1157, an indigent and homeless mother of young children was trapped in a cycle where she could not pay the fees to reinstate a suspended driver's license and incurred additional fees and fines associated with misdemeanor convictions for driving with a suspended license that she could not afford to pay. (*Id.* at p. 1161.) After pleading no contest to another misdemeanor charge of driving with a suspended license, Dueñas requested that the trial court conduct an ability

14

to pay hearing, at which the court determined that she lacked the ability to pay attorney fees for representation by a public defender (§ 987.8, subd. (b)) and waived these fees. (*Dueñas, supra*, at p. 1163.)  Nonetheless, the court imposed assessments and a minimum restitution fine.  (*Ibid*.)

On appeal, the court held "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168.)

As for the restitution fine under section 1202.4, the statute prohibits a trial court from considering a defendant's ability to pay unless the fine exceeds the statutory minimum amount. (§ 1202.4, subds. (b)(1), (c).)  The court in *Dueñas* held that the statute violates due process.  (*Dueñas, supra*, 30 Cal.App.5th at p. 1171.)

We are not unsympathetic with the plight of the indigent who, like Dueñas, find themselves trapped in a set of unfortunate circumstances created by the imposition of fines and fees they cannot afford to pay.  Though the seeds of their predicament were sowed by their own misconduct, it may nonetheless seem unfair that those with money can avail themselves of opportunities and avoid consequences that the poor cannot.  But as much as we might sympathize with their plight, the constitutionality of a fine or fee does not rest on whether the imposition seems unfair.  As pointed out in *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted November 26, 2019, S258946, the Constitution has been held to bar the imposition of financial exactions on the impecunious only when to do so "would otherwise preclude criminal and civil litigants from prosecuting or defending lawsuits or from having an appellate court review the propriety of any judgment," or when the failure to pay would result in the incarceration of persons lacking the ability to pay. (*Hicks*, at p. 325.)

15

We agree with *Hick*'s explication of the constitutional principles on which *Dueñas* relies and therefore disagree with the *Dueñas* holding. The imposition of fees and fines in this case does not compromise defendant's constitutional right of access to the courts nor will it result in any additional incarceration, and thus no liberty interest protected by due process is implicated.

The *Dueñas* holding was based on due process. In addition to the due process holding of *Dueñas*, defendant also asserts the $2,400 restitution fine is excessive under the Eighth Amendment and article 1, section 17 of the California Constitution and violates his right to equal protection of the law in the absence of a finding that he has the ability to pay the fine.

A fine is excessive for purposes of the Eighth Amendment if it "is grossly disproportional to the gravity of the defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 337-338 [141 L.Ed.2d 314].) We do not find the $2,400 fine imposed on defendant is disproportionate to defendant's conduct in inflicting a stab wound to his victim's temple, penetrating into the skull, a laceration to his victim's lower lip that almost severed the lip from his face, a stab wound to his jaw penetrating into the jawbone, a stab wound to his left chest cavity injuring the left lung, a stab wound to the left side of his abdomen, a stab wound that entered his upper chest cavity and penetrated downward into his abdominal cavity through the diaphragm, narrowly missing the liver, and a laceration to the inside of his right wrist.

Defendant's equal protection argument was made and rejected in *People v. Glenn* (1985) 164 Cal.App.3d 736, 739-740. Apart from the *Dueñas* decision, which we reject, defendant cites no other authority in support of his argument.

16

## DISPOSITION

The judgment is affirmed.

_____/s/_____
RAYE, P. J.

I concur:

_____/s/_____
DUARTE, J.

17

ROBIE, J., Concurring and Dissenting.

I concur in all parts of the Discussion except the majority's "Imposition of Fines and Fees" analysis in part III. I conclude defendant forfeited his challenge to the general restitution fine because our Supreme Court has already determined an objection necessary to challenge the imposition of the fine in excess of the mandatory minimum. (*People v. Nelson* (2011) 51 Cal.4th 198, 227.)

As to the court operations fee and criminal conviction fee, I agree with *Dueñas* that principles of due process would preclude a trial court from imposing such fees if the defendant demonstrates he or she is unable to pay them. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168.) As stated in *Castellano*, however, a trial court is required to determine a defendant's ability to pay only if the defendant raises the issue, and the defendant bears the burden of proving an inability to pay. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.) In the absence of authority invalidating the challenged fees on inability to pay at the time the trial court imposed them, defendant could not have reasonably been expected to challenge the trial court's imposition thereof. (*People v. Welch* (1993) 5 Cal.4th 228, 237 ["[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence"].) As such, because defendant's conviction and sentence are not yet final, I believe a limited remand under *Dueñas* is appropriate to permit a hearing on defendant's ability to pay the court operations fee and criminal conviction fee. (See *Castellano*, at pp. 490-491.)

                                                     /s/
                                                 ROBIE, J.

1