NARES, J.
*1236 Susan Joy Avignone and William Alan Avignone (together the Avignones) defrauded five investors out of more than $700,000 in a real estate scheme. In exchange for dismissal of some of the charges, the Avignones pleaded guilty to three counts of fraud in connection with the offer, sale, and purchase of a security (Corp. Code, §§ 25401 & 25540, subd. (b); counts 2, 8, 10) and two counts of grand theft of personal property with a value of more than $950 (Pen. Code, § 487, subd. (a)[1] ; counts 3, 5). Susan admitted a section 186.11, subdivision (a)(2) allegation attached to count 10 and a section 12022.6, subdivision (a)(1) allegation attached to count 5. William admitted a section 186.11, subdivision (a)(2) allegation attached to *64 count 2, a section 12022.6, subdivision (a)(2) allegation attached to count 3, and a section 12022.6, subdivision (a)(1) allegation attached to count 5. At sentencing, the trial court struck the section 186.11 enhancements and denied probation. It sentenced the Avignones to an aggregate term of five years four months to be served in the custody of the sheriff. The court imposed a split sentence, ordering that one year four months of the imposed sentence would be served in the community under mandatory supervision.
The Avignones separately appealed, contending the trial court abused its discretion in denying probation.[2] William also contends (1) the electronic search condition was unreasonable and unconstitutionally overbroad, and (2) the trial court improperly calculated a restitution order as to one of the victims. The People assert that the Avignones' sentences are unauthorized because the trial court did not have discretion to sentence them to county jail, rather than prison.
In the published portion of this opinion, we agree that the trial court imposed an unauthorized sentence because a white collar crime enhancement *1237 is a disqualifying factor under the Criminal Justice Realignment Act of 2011 (operative Oct. 1, 2011, as added by Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1). Accordingly, the trial court imposed an unauthorized sentence as it lacked discretion to strike the white collar enhancements under section 1385, and thus could not impose a split sentence.
In the unpublished portion of this opinion, we reject the Avignones' argument that the trial court abused its discretion in denying probation. The People concede that the trial court improperly calculated the restitution for one of the victims. Finally, William's argument regarding the electronic search condition is moot based on our conclusion that he received an unauthorized sentence. We reverse the judgments and remand with directions to allow the Avignones an opportunity to withdraw their guilty pleas.
GENERAL FACTUAL BACKGROUND
Because the parties are familiar with the facts, we summarize only the general facts concerning the underlying crimes at issue in this appeal. We present additional facts concerning the issues on appeal in our discussion post .
Eric-Count 2
Eric spoke to his pastor about his plan to borrow against the equity in his home to obtain funds he needed to start a new drywall business. The pastor referred Eric to Susan, his sister, for financial advice. Susan told Eric that she and her husband, William, were financial planners doing business as SABA Investments (SABA). In May 2006, Susan helped Eric refinance his home, with part of the funds used to purchase life insurance policies for Eric and his wife.
In April 2009, William contacted Eric by telephone to suggest borrowing against the life insurance policies to invest in real estate in Georgia to obtain a greater return than what the life insurance policies provided. Eric sent a check to SABA for $27,000. He received a promissory note indicating that he and his wife would receive quarterly payments for five years and a 50 percent share of the equity in the property when it was sold in five years. The investment was to be secured by a first lien on the property. The quarterly payments stopped in October 2010. In January 2011, William told Eric that he did not have the money to pay him back. Eric *65 never received paperwork indicating the investment was used to purchase real property and never received any lien paperwork for property in Georgia. *1238 Otilia-Count 3
Otilia met the Avignones through a friend and purchased a life insurance policy from them. In 2009, Otilia met with the Avignones. They suggested that she borrow against her life insurance policy and use the money to invest in real estate in Georgia. They told her they would purchase a block of properties from the government, turn them around in three to five years, triple the money, and she would get half. In June 2009, Otilia invested $70,000. She received a promissory note for that amount and was promised quarterly payments of $2,100. In February 2010, Otilia made a $245,000 investment with the Avignones. At some point, she made another $38,760 investment. Otilia initially received some payments, but in March 2011 all payments on her investments stopped. Otilia never received any paperwork showing that property had been purchased with her funds or paperwork showing that she was a first lien holder on any property.
Monroe-Count 5
After meeting William through a mutual friend, Monroe purchased a life insurance investment from William. In June 2009, William told Monroe that his company, SABA, used investor funds to purchase distressed properties in Georgia, fix them up, and rent them out. William promised Monroe that if he invested in the plan, Monroe would receive first lien status on the title of each property purchased. William promised quarterly payments on the investment and 50 percent of the profit when the properties were sold. Monroe invested a total of $150,000. Monroe initially received some payments, but the payments stopped. In July 2011, William told Monroe that the payments would resume soon, but Monroe never received any more payments.
Carlos-Count 8
Carlos met the Avignones through Otilia. In 2010, Carlos met with the Avignones and gave his $217,000 retirement sum to the Avignones. The Avignones used $200,000 to invest in property located in Georgia and returned the balance so Carlos could pay off creditors. In return, Carlos received a promissory note that guaranteed him $2,000 per month. He received several months of payments, but the payments were then cut in half and ultimately stopped. William never returned Carlos's telephone calls and Carlos discovered that the SABA office had been vacated.
Frank-Count 10
Frank met the Avignones at church and considered them his "best church friends." In early 2010, Frank sought financial advice from the Avignones as *1239 he was facing foreclosure of his home. In May 2010, Frank gave the Avignones $54,000 to invest in real estate in a southern state. In return, he received a promissory note for $54,000 and was promised quarterly interest payments. Frank received payments for about eight months when the payments stopped.
Investigation
Investigators found real estate in Georgia in the name of Susan and SABA. There were no liens in favor of any of the victims. SABA was registered to Susan and she signed most of the checks that depleted the victims' investment funds. Investigators traced the victims' investments to a SABA account, other accounts connected to the Avignones, or Susan's personal account. The Avignones used the investment *66 funds for utilities, car payments, entertainment, and restaurants.
DISCUSSION
I. PROBATION DENIAL**
II. UNAUTHORIZED SENTENCE
A. Background Facts
The information alleged white collar crime sentencing enhancements under section 186.11, subdivision (a)(2) and (3) against the Avignones. It further alleged that the Avignones were subject to mandatory state prison incarceration under section 1170, subdivisions (f) and (h)(3). At the start of the change of plea hearing, the trial court stated it had discussed its indicated sentence with counsel during "a series of unreported chambers conferences" and when they met today, the court had given "an indicated sentence ... if there were a plea to the sheet."[4] The trial court informed the Avignones:
"... I will not impose a sentence of more than six years of imprisonment if I impose a term of imprisonment.
"Under these counts and allegations as you are admitting them , any term of imprisonment that would be imposed would normally have to be served in *1240 the California Department of Corrections and Rehabilitation, as opposed to the local San Diego County Jail.
"I have told all counsel and I will tell you folks that I believe that I have the authority to strike the punishment on the allegation that require[s] this term of imprisonment to be served in the state prison.
"If I do that, that means that any term of imprisonment that I do impose would be served in the custody of the San Diego County Sheriff, rather than in the Department of Corrections and Rehabilitation.
"This is I think regarded by most people who are defendants as a material benefit, because it means that any term of imprisonment that does get imposed will be served here locally, rather than going into the state prison." (Italics added.)
The court then stated that if it gave "a term of imprisonment, [it would] not send [them] to the Department of Corrections and Rehabilitation. Any sentence would be served in the custody of the San Diego County Sheriff." The court summarized as follows: "The bottom line is, folks, we're going to have a sentencing hearing and your sentence could be anywhere between probation, local time anywhere between zero and one year up to a term of imprisonment for six years, which could at first be [a] straight six-year term of local imprisonment or it could be a term where I split it and order a certain amount of time to be served in custody and a certain amount of time to be served under supervision."
Thereafter, the Avignones did not plea to the sheet. Rather, William admitted to counts 2, 3, 5, 8, and 10 and the section 186.11, subdivision (a)(2) allegation (the white collar enhancement) attached to count 2. Susan admitted to the same counts and the same allegation attached to count 10. The plea agreement stated that the balance of the charges would be dismissed. At the sentencing hearing, the trial court struck the white collar enhancements. It then sentenced the Avignones to an aggregate term of five years four *67 months to be served in the custody of the sheriff. The court imposed a split sentence, ordering that one year four months of the imposed sentence would be served in the community under mandatory supervision.
B. Analysis
"A split sentence is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department. Such sentences are imposed pursuant to ... section 1170, subdivision *1241 h)(5)(B)(i), a provision originally adopted as part of the '2011 Realignment Legislation addressing public safety.' (Criminal Justice Realignment Act of 2011 (Realignment Act), operative Oct. 1, 2011, as added by Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1.)" ( People v. Camp (2015) 233 Cal.App.4th 461, 464, fn. 1, 182 Cal.Rptr.3d 628.) " 'Under the Realignment Act, qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison. [Citation.] Trial courts have discretion to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision.' " ( Id. at p. 467, 182 Cal.Rptr.3d 628.)
The People assert that the trial court imposed an unauthorized sentence as it lacked discretion to strike the white collar enhancements under section 1385, and thus could not impose a split sentence. Susan concedes the error, while William argues that, based on the language of the relevant statutes, because the court dismissed the punishment on the white collar enhancements, its imposition of a local prison sentence was duly authorized by the Penal Code. The Avignones both argue that, if we find the sentence to be unauthorized, they should be allowed to withdraw their guilty pleas.
Section 1385, subdivision (a) provides in part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Section 1385 may be used to dismiss individual counts in accusatory pleadings, sentencing enhancements, allegations that the defendant has suffered a prior conviction, and allegations that the defendant has suffered a prior " 'strike' " within the meaning of the "Three Strikes" Law. ( In re Varnell (2003) 30 Cal.4th 1132, 1134, 135 Cal.Rptr.2d 619, 70 P.3d 1037.) Section 1385, subdivision (c)(1) authorizes the trial court to strike or dismiss an enhancement, or to instead strike the additional punishment for that enhancement in the furtherance of justice.
Nonetheless, "[t]he judicial authority to dismiss a criminal action or allegation in furtherance of justice is statutory and may be withdrawn by the Legislature. [Citation.] A court may exercise such authority unless, in a given context, the Legislature has clearly evidenced a contrary intent. [Citations.] Courts will not interpret another statute as eliminating the power to dismiss under section 1385 unless there is clear legislative direction to that effect. [Citation.] But the Legislature can provide such clear direction without expressly referring to section 1385." ( People v. Chavez (2016) 5 Cal.App.5th 110, 117, 208 Cal.Rptr.3d 921.)
The Realignment Act changed the definition of a felony to an offense punishable by death, *1242 imprisonment in state prison, or by " 'imprisonment in a county jail under the provisions of subdivision (h) of Section 1170.' " ( People v. Lynch (2012) 209 Cal.App.4th 353, 357, 146 Cal.Rptr.3d 811 ( *68 Lynch ), citing § 17, subd. (a).) A defendant sentenced under the Realignment Act is generally committed to county jail instead of state prison. ( People v. Griffis (2013) 212 Cal.App.4th 956, 961, 151 Cal.Rptr.3d 508.) Section 1170, subdivision (h) provides:
"(1) Except as provided in paragraph (3) , a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years.
"(2) Except as provided in paragraph (3) , a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense.
"(3) Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a serious felony described in subdivision (c) of Section 1192.7 or a prior or current conviction for a violent felony described in subdivision (c) of Section 667.5, (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5, (C) is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, or (D) is convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison ." (Italics added, boldface omitted.)
Subdivision (f) of section 1170 provides:
"Notwithstanding any other provision of this section, for purposes of paragraph (3) of subdivision (h), any allegation that a defendant is eligible for state prison due to a prior or current conviction, sentence enhancement , or because he or she is required to register as a sex offender shall not be subject to dismissal pursuant to Section 1385 ." (Italics added, boldface omitted.)
The white collar enhancements that the Avignones admitted require an additional term of punishment of two, three, or five years "in the state prison" for a pattern of related felony conduct involving the taking of, or resulting in the loss of more than $500,000. (§ 186.11, subd. (a)(2).) "The additional prison term provided in paragraph (2) of subdivision (a) shall be in addition to any other punishment provided by law, including Section 12022.6, and shall not be limited by any other provision of law ." (Id. , subd. (b)(2), italics added.)
*1243 Section 1170, subdivision (h) makes suffering a white collar enhancement a disqualifying factor for sentencing to county jail under that statute. ( People v. Sheehy (2014) 225 Cal.App.4th 445, 450, 169 Cal.Rptr.3d 899 [section 1170 requires that a prison sentence be imposed if a defendant, among other things, has sustained a section 186.11 aggravated white collar crime enhancement]; Lynch , supra , 209 Cal.App.4th at p. 357, 146 Cal.Rptr.3d 811 [same].) Section 1170, subdivision (f) provides that the trial court's striking of the white collar enhancement was unauthorized. Read together, the plain language of section 186.11 and subdivisions (f) and (h)(3) of section 1170 provide that the trial court lacked the authority to strike the white collar enhancements and that any sentence imposed on the enhancements must be served in state prison, not local custody. Accordingly, the trial court's split sentence was unauthorized.
William seeks to avoid this result arguing that "the Legislature did not mean to *69 send every defendant who admits a section 186.11 enhancement to state prison" claiming this interpretation renders the language provided in section 1170, subdivision (h)(3) meaningless. We disagree. As we indicated, subdivisions (f) and (h)(3) of section 1170 must be read together. Subdivision (f) of section 1170 provides that the trial court lacked the authority to strike the white collar enhancement allegations. Subdivision (h)(3) of section 1170 in turn provides that any sentence imposed on the white collar enhancement allegations must be served in state prison.
The Avignones argue in their reply briefs that, if we conclude that they received unauthorized sentences, they should be allowed the opportunity to withdraw their pleas. We invited the Attorney General to file a supplemental letter brief addressing this issue. The People responded, noting that the Avignones did not plead guilty in exchange for a specific sentence. Rather, the trial court gave an indicated sentence which contained an unauthorized sentencing choice. The People argue that the Avignones should not be allowed to withdraw their guilty pleas because they can properly be sentenced to a prison term of no less than six years in accordance with the court's indicated sentence. Thus, the proper remedy is to remand the matter for the trial court to impose a lawful sentence in accordance with the indicated sentence. Alternatively, the People assert we should remand the matter with leave for the Avignones to file a motion to withdraw their pleas whereby the trial court may determine whether the pleas were based on their belief that they would serve any time in jail rather than prison.
An indicated sentence may be part of a plea agreement with the district attorney (see, e.g., People v. Buttram (2003) 30 Cal.4th 773, 777, fn. 2, 134 Cal.Rptr.2d 571, 69 P.3d 420 ) or may be stated by the court without the prosecutor's agreement ( People v. Superior Court (Ramos ) (1991) 235 Cal.App.3d 1261, 1271, 1 Cal.Rptr.2d 333 ). In the latter circumstance, *1244 the trial court informs a defendant "what sentence he [or she] will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." ( People v. Superior Court (Smith ) (1978) 82 Cal.App.3d 909, 915-916, 147 Cal.Rptr. 554.) An indicated sentence falls "within the boundaries of the court's inherent sentencing powers and, in contrast to plea bargains, prosecutorial consent is not required." ( Ramos , at p. 1271, 1 Cal.Rptr.2d 333.)
The trial court here did not expressly state that its "indicated sentence represent[ed] the court's best judgment as to the appropriate punishment for [these] defendant[s] and [these] offense[s], regardless of whether guilt is established by plea or at trial." ( People v. Clancey (2013) 56 Cal.4th 562, 576, 155 Cal.Rptr.3d 485, 299 P.3d 131 ( Clancey ).) Accordingly, the record is ambiguous as to whether the trial court gave a proper indicated sentence or engaged in unlawful judicial plea bargaining by offering the Avignones more lenient treatment or another inducement to enter a guilty plea. ( Id. at p. 575, 155 Cal.Rptr.3d 485, 299 P.3d 131.) In Clancey , our high court concluded that a conditional reversal was the appropriate remedy to resolve the ambiguity. ( Id. at p. 578, 155 Cal.Rptr.3d 485, 299 P.3d 131.)
As we discussed, the trial court lacked the authority to impose its indicated sentence. Additionally, the record suggests that the trial court may have engaged in improper judicial plea bargaining as it expressly stated that its "indicated sentence would be appropriate if there were pleas and acceptance of responsibility. [¶] I've discussed with all counsel the fact that the court makes-places considerable emphasis *70 on acceptance of responsibility when it comes down to a sentencing decision. [¶] Of course each client, each defendant, has a complete right to go to a jury trial. And if they were successful, then of course acceptance of responsibility is not an issue because they would have been found not guilty. [¶] On the other hand, as I've explained to counsel, if they were not successful and the trial did not go the way the defense would like it to go, then their exposure is considerable, and that is made-if not worse, there's certainly no benefit for acceptance of responsibility if this comes after a trial." A proper indicated sentence does not occur where "the court extended leniency to defendant because of his plea." ( Clancey , supra , 56 Cal.4th at p. 578, 155 Cal.Rptr.3d 485, 299 P.3d 131.)
Under these circumstances, the Avignones must be allowed the opportunity to withdraw their pleas and admissions. (See In re Williams (2000) 83 Cal.App.4th 936, 944-945, 100 Cal.Rptr.2d 144 [where agreed-upon sentence exceeds court's jurisdiction, the court lacks power to effectuate the bargain, and defendant's remedy is to withdraw the plea].) If the Avignones withdraw their pleas, all original charges and allegations will be reinstated.
*1245 III.-IV.***
DISPOSITION
For the reasons stated ante , the judgments are reversed and the case remanded so that defendants may decide whether to withdraw their guilty pleas. If defendants withdraw their pleas, all original charges and enhancements shall be reinstated and trial or other appropriate disposition shall proceed.
If defendants choose to not withdraw their pleas, then the judgments shall be reinstated and defendants resentenced. The restitution order must be modified to reflect that Otilia is entitled to a restitution award in the amount of $82,200.
WE CONCUR:
McCONNELL, P. J.
O'ROURKE, J.

Undesignated statutory references are to the Penal Code.

We granted Susan's unopposed motion to consolidate the appeals.

See footnote *, ante.

A " 'plea[ ] to the sheet' " represents a plea made "in the hope that the court will show leniency," rather than "for a consideration which would support a contract." (People v. Marsh(1984) 36 Cal.3d 134, 140, 202 Cal.Rptr. 92, 679 P.2d 1033.)

See footnote *, ante.