Filed 8/15/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re WILLIAM AVIGNONE on Habeas Corpus. | D074231<br><br>(Super. Ct. No. SCD250640 ) |


Original proceeding on a petition for writ of habeas corpus. Relief granted.

Office of the Alternate Public Defender, Megan Marcotte, Chief Deputy, Vickie Fernandes and William Sharp, Deputy Alternate Public Defenders for Petitioner.

Summer Stephan, District Attorney, Mark A. Amador, Linh Lam, Jennifer L. Gianera and Brooke Etemadi Tafreshi, Deputies District Attorney for Respondent.

Petitioner William Avignone is in custody awaiting trial on charges of multiple counts of grand theft of personal property (Pen. Code,[1] § 487, subd. (a); counts 1, 3, 5, 7, 9) and fraud in connection with the offer, purchase, or sale of security (Corp. Code,

---

[1] Statutory references are to the Penal Code unless otherwise specified.

§§ 25401, 25540, subd. (b); counts 2, 4, 6, 8, 10).[2] Before December 2017, he had been out on bail for four years. During that time, he made all court appearances and did not engage in criminal activity.

As part of a plea deal, Avignone pled guilty to three counts of fraud and two counts of grand theft while the prosecution dismissed the remaining counts. The trial court sentenced him to five years four months to be served in the custody of the sheriff. Avignone appealed the sentence, arguing, among other things, the court abused its discretion in denying probation. This court rejected that contention, but allowed Avignone to withdraw his guilty plea. He did so, and the superior court held a bail review hearing. After multiple hearings, including a request for the court to reconsider its order following *In re Humphrey* (2018) 19 Cal.App.5th 1006, review granted May 23, 2018, S247278 (*Humphrey*), the court increased Avignone's bail to $300,000.

---

[2]     Also, it is alleged under the aggravated white collar crime enhancement that Avignone committed two or more related felonies involving fraud or embezzlement resulting in loss to another person of more than $500,000 (§ 186.11, subd. (a)(2); count 10), and Avignone committed two or more related felonies involving fraud or embezzlement involving loss to another person of more than $100,000 but less than $500,000 (§ 186.11, subd. (a)(3); count 10). In addition, it is alleged that neither the victim or law enforcement had actual or constructive knowledge of the offense prior to the offense discovery date; thus, there was no violation of any limitation of time for the offense to be charged. (§ 803, subd. (c); counts 1, 3, 5.) It is alleged that in the commission or attempted commission of count 3, Avignone did take, damage, and destroy property with the intent to cause such taking, damage, and destruction and the loss exceeded $200,000. (§ 12022.6, subd. (a)(2); count 3.) It is further alleged that in the commission and attempted commission of some of the charged offenses, Avignone did take, damage, and destroy property, with the intent to cause such taking, damage, and destruction, and the loss exceeded $65,000. (§ 12022.6, subd. (a)(l); counts 5, 7.)

Avignone brings the instant petition, arguing the court abused its discretion in increasing his bail and setting it at an amount that violates *Humphrey, supra,* 19 Cal.App.5th 1006, review granted, the Eighth Amendment of the United States Constitution, and article 1, section 12 of the California Constitution. We agree, based on the specific facts before us, the court abused its discretion. As such, we grant the requested relief.

FACTUAL AND PROCEDURAL BACKGROUND

The charges against Avignone and his wife, Susan,[3] are based on an alleged scheme wherein they stole $786,000 from numerous would-be investors. The Avignones held themselves out as money managers and arranged through their church and other places to hold meetings to persuade individuals to invest their money with SABA Investments, a company owned by the Avignones. The Avignones told prospective investors that they would purchase real property in Georgia, refurbish the property, rent the property, and sell the property at a profit.

The investors were promised 50 percent of the profits. They also were to receive eight to 12 percent interest on their investments. The Avignones moved the investors' money through several accounts before depositing the money in their personal account. A total of seven properties were purchased in Georgia. However, none of the properties were placed in the investors' names as promised. The Avignones used the money to pay their personal expenses and to purchase other items. Some of the investors received back

[3]    For clarity, we refer to William Avignone as Avignone, Susan Avignone as Susan, and Avignone and Susan together as Avignones.

a small amount of the money they invested. In all, the Avignones took a total of $786,000 from the unsuspecting investors.

In exchange for dismissal of some of the charges, Avignone pled guilty to three counts of fraud in connection with the offer, sale, and purchase of a security (Corp. Code, §§ 25401 & 25540, subd. (b); counts 2, 8, 10) and two counts of grand theft of personal property with a value of more than $950 (§ 487, subd. (a); counts 3, 5).[4] Avignone admitted a section 186.11, subdivision (a)(2) allegation attached to count 2, a section 12022.6, subdivision (a)(2) allegation attached to count 3, and a section 12022.6, subdivision (a)(1) allegation attached to count 5. At sentencing, the trial court struck the section 186.11 enhancements and denied probation. It sentenced Avignone to an aggregate term of five years four months to be served in the custody of the sheriff. The court imposed a split sentence, ordering that one year four months of the imposed sentence would be served in the community under mandatory supervision.

Avignone appealed the sentence, contending, among other issues, that the trial court abused its discretion in denying probation. As part of that appeal, the People asserted that Avignone's sentence was unauthorized because the trial court did not have the discretion to sentence him to county jail, rather than prison.

On appeal, we rejected Avignone's argument that the trial court abused its discretion. We also agreed with the People that the trial court imposed an unauthorized sentence. We thus reversed the judgment against Avignone and remanded the matter

---

[4]     Susan also pled guilty. Because the petition before us is not brought on behalf of her, we do not discuss Susan in this opinion except as needed to provide context.

4

back to the trial court with directions to allow Avignone an opportunity to withdraw his guilty plea.[5] (See *People v. Avignone, supra,* 16 Cal.App.5th at pp. 1237-1238.)

After remand, the trial court held a hearing to determine whether the Avignones wished to withdraw their guilty pleas. Avignone admitted that he understood the maximum prison sentence on this case was 15 years four months. The prosecutor indicated that if Avignone did not withdraw his plea, she would strike the section 186.11 enhancements to allow Avignone to serve his time locally, which would produce a result consistent with the original plea.

Ultimately, Avignone did not accept the prosecutor's offer and withdrew his plea. The prosecutor then requested $600,000 bail for Avignone in accordance with the bail schedule, arguing that Avignone ran a sophisticated scheme that bilked victims out of $786,000. The prosecutor also maintained that Avignone, along with his wife, would continue their criminal activity and endanger the community if they were out on bail. That said, the prosecutor conceded that Avignone made all previous court hearings and had no assets or income.

Avignone's counsel argued that Avignone had remained out on $100,000 bail during the appeal, has been compliant on probation for an earlier bank fraud case, and Avignone had not been any danger to the public since 2011. Counsel also represented the Avignones were indigent. The court noted that the sentence recommended by the

---

5       Susan also appealed her sentence. Her appeal was consolidated with her husband's. We reversed the judgment against her as well. (See *People v. Avignone* (2017) 16 Cal.App.5th 1233, 1236-1238.)

5

probation report was 11 years eight months custody, and without the section 186.11 allegation stricken, Avignone would serve his custody in prison. Avignone's counsel pointed out that only about $240,000 was converted for the Avignones' personal gain, and the rest was used to keep their business going and provide restitution when the business collapsed.

The court determined there were changed circumstances to support an increase in bail because Avignone now realized he was facing a lot of time in custody (i.e., the instant action was not just "a probation case"). The court stated that Avignone "doesn't have any reason to stick around[,]" "has health issues[,]" is "facing a lot of time in custody[,]" and is "a flight risk." The court observed that Avignone did not "have any trade" but was a business person who scammed people into giving him their money. In addition, the court commented that it did not know how Avignone would live out of custody. Therefore, the court set Avignone's bail at $300,000.

After the superior court increased Avignone's bail, Division 2 of the First District issued its opinion in *Humphrey*, *supra*, 19 Cal.App.5th 1006, review granted. In that case, among other things, the appellate court concluded that, in setting bail, a trial court must determine the ability of the defendant to pay "to guard against improper detention based only on financial resources." (*Id.* at p. 1036.) Avignone thus filed a motion

requesting that the court review the order fixing bail under section 1270.2 and

*Humphrey*.[6]

In response to the motion, the court held another bail hearing. The court stated that it was treating the hearing as a bail review, but that it would "need to start fresh and [it] intended to do so" under *Humphrey*, *supra*, 19 Cal.App.5th 1006, review granted. The prosecutor asked for bail to remain the same ($300,000). The prosecutor argued two factors that the court must consider in determining bail: whether the defendant was a danger to the community and whether there are less restrictive alternatives. The prosecutor explained that Avignone was a danger to the community and that he engaged in a pattern of criminal conduct, warning the court that he could concoct another scheme to bilk others out of money. She also discussed the likelihood that Avignone would flee because he was facing up to 14 years in prison. The prosecutor further noted that unlike the petitioner in *Humphrey*, Avignone had not made any offer of alternatives to custody such as residential programs.

Avignone's counsel explained to the court that when Avignone was originally arraigned, about four years earlier, the court set his bail at $500,000. However, Avignone's counsel at that time, successfully argued that the bail should be reduced to $100,000. Avignone was able to post bail and made every court date during the past four years "without fail." Counsel also pointed out that Avignone had not committed an

---

6      Susan filed a motion as well, and the court also reconsidered her bail, which had been set at $500,000.

unlawful act since 2012, Avignone was not a flight risk, and before his guilty plea, Avignone was facing 23 years of potential custody.

In response, the court invited Avignone's counsel to address two changes in circumstance: (1) Avignone's "treatment [for cancer was] stable" and (2) Susan was "out of custody." Avignone's counsel responded that Avignone did not flee before his cancer diagnosis when he and his wife were both out of custody. Counsel emphasized that the court's concern that Avignone could flee was based on speculation, not fact. He also noted that "anybody could flee[.]" He again pointed out that Avignone had not engaged in any criminal activity over the past five years, and although he has been desperate (living with friends, health issues, and legal issues), Avignone had not attempted to flee.

The court remained unconvinced, expressing worry that Avignone would "take a walk across the border and not come back." Ultimately, the court stated it was not "very comfortable" that it could "come up with something that" "accurately balance[d] everything that [it was] supposed to balance"; thus, it continued the hearing.

On the continued bail hearing date, the court heard the testimony of Sue Jordan. Jordan testified that Avignone had been living on her property in a camper for the past three years. She also stated that if Avignone made bail, she would allow him and his wife to live on her property. After allowing the parties to further address bail issues, the court took the matter under submission and continued the hearing to the next day.

The next day, the court issued its ruling setting bail. In doing so, the court explained it considered Avignone's very limited funds in setting the bail amount. To this end, the court stated:

8

"There's a difference between someone's current financial status and their ability to post bail. I think it would be reasonable at this point to say that the defendants currently have a financial status that really shows no assets. . . . However, the ability to post bail doesn't -- can also include someone's ability to get others to post bail. And in this particular case in light of this history the one that that I am having a really hard time ignoring, and I can't ignore, and I haven't ignored is that these defendants have a very definite gift. The power of persuasion. And they were able to get people who were their friends, people who trusted them to give them large amounts of money to invest . . . . [¶] I think they have the ability to persuade. [¶] So what I've done is taking the different people that they persuaded, and it's the largest amount that they were able to persuade from one [in] particular was 355,000. So I've used that as my base. I think that's a reasonable approach to the situation that they have been able to persuade somebody to give them $355,000.

After explaining that it did not find credible the Avignones' claim that they were duped into an investment scheme and did not intend to commit fraud, the court made clear that it was not only considering Avignone's ability to pay bail, but also Avignone's capacity to run another investment scheme if released on bail as a relevant factor in calculating Avignone's current financial status. The court observed: "So I think their power of persuasion is good. That is a consideration that is appropriate for someone's ability to pay. Even in the face of the fact that they have no financial assets now, and I'm accepting that. I think that's the state of the evidence."

Additionally, the court discussed the possibility of Avignone fleeing San Diego. It noted that Avignone would have reason to flee because he was "facing time in custody." In considering the risk of flight, the court stated it had "avoided using the fact that [Avignone] entered a guilty plea" but noted that "people don't usually enter a guilty plea if, in fact, they're not guilty[.]" The court also emphasized that Avignone's health had

9

improved and "at this stage," it "would not be a surprise" if Avignone fled if he made bail.  To this end, the court further observed that Avignone lived in "a trailer that's mobile" giving him the ability to leave.

The court also emphasized that Avignone remained a threat to the community because he would need "some means to support" himself, he could convince people to invest in another scheme, and bank accounts could be set up on line.  The court additionally stated that Avignone's goal to pay investors back was "unrealistic unless [the Avignones] come up with another get rich quick scheme, and that I think puts, again, the public at risk."

The court then used $355,000 as the base bail amount and added $60,000 for the average per year that Avignone "used as somebody else's money," establishing $415,000 as the base bail.  The court explained that it did "not believe that alternative measures [were] satisfactory to protect the public or to ensure [Avignone's] presence[.]"  However, the court did not think it fair to increase Avignone's bail, so it kept it at $300,000 (although it stated there was a "basis" to increase his bail more).

Avignone subsequently filed, in the superior court, a petition for a writ of habeas corpus regarding his bail.  The superior court denied the petition without prejudice, reasoning that *Humphrey*, *supra*, 19 Cal.App.5th 1006 was under review by the California Supreme Court and had no binding or precedential effect on the superior court.

Avignone then filed a petition for writ of habeas corpus in this court.  The People filed a return, and Avignone filed a traverse.

10

DISCUSSION

Avignone contends the superior court abused its discretion when it increased his bail from $100,000 to $300,000 without good cause or change in circumstance as required under section 1289. As such, he claims he was denied his right to reasonable bail as required under article 1, section 12, of the California Constitution, the Eighth Amendment of the United States Constitution, and *Humphrey*, *supra*, 19 Cal.App.5th 1006, review granted.[7] The People counter that *Humphrey* is not binding on this court because the California Supreme Court has granted review.[8] Further, they assert, even if we choose to follow *Humphrey*, the superior court conducted a bail hearing consistent with the dictates of *Humphrey* and found a change in circumstance that justified an increase in Avignone's bail. Avignone has the better argument.

---

[7] Avignone also raises a possible equal protection claim. Susan filed a petition for a writ of habeas corpus, challenging her bail amount. The superior court denied the petition without prejudice because our high court granted review in *Humphrey, supra,* 19 Cal.App.5th 1006, review granted. Nevertheless, the superior court treated the matter as a bail review and ultimately reduced Susan's bail to $100,000. Avignone claims he is similarly situated as Susan; thus, the court violated the equal protection clause of the United States Constitution when it did not reduce his bail to $100,000. This equal protection claim is not well developed in the petition, but we need not reach that issue here. As we discuss below, we conclude the superior court abused its discretion in increasing Avignone's bail amount to $300,000.

[8] "Pending review and filing of the Supreme Court's opinion, unless otherwise ordered by the Supreme Court under (3), a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potential persuasive value only. Any citation to the Court of Appeal opinion must also note the grant of review and any subsequent action by the Supreme Court." (Cal. Rules of Court, rule 8.115(e)(1).)

"Except under limited circumstances, the California Constitution guarantees a pretrial right to release on nonexcessive bail.  [Citation.]  A defendant is entitled to one automatic review of the order fixing the amount of bail and the issue of appropriate bail may be raised at various times throughout the criminal proceedings.  [Citations.]  The court in setting, reducing, or denying bail must primarily consider the public safety.  [Citation.]  Additionally, the court considers the seriousness of the offense charged, the defendant's criminal record and the probability the defendant will appear for hearings or trial.  [Citation.]  As to the seriousness of the offense charged, the court, inter alia, considers the alleged injury to the victim, alleged threats to victims or witnesses, the alleged use of a firearm and the alleged use or possession of controlled substances."  (*In re Weiner* (1995) 32 Cal.App.4th 441, 444.)

In 2013, for the crimes at issue here, Avignone's bail was $100,000.  He was released on bail on or about November 27, 2013.  Avignone remained out of custody on that bail until the December 20, 2017 hearing, wherein the court increased his bail to $300,000.  The court found changed circumstances and good cause to increase Avignone's bail.

Section 1289 addresses the court's ability to reconsider bail after the information has been filed:

> "After a defendant has been admitted to bail upon an indictment or information, the Court in which the charge is pending may, upon good cause shown, either increase or reduce the amount of bail.  If the amount be increased, the Court may order the defendant to be committed to actual custody, unless he give bail in such increased amount.  If application be made by the defendant for a reduction of

12

the amount, notice of the application must be served upon the District Attorney."  (§ 1289.)

We review a superior court's decision to increase or reduce bail for an abuse of discretion.  (*In re Christie* (2001) 92 Cal.App.4th 1105, 1107.)  "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)  The superior court's statement of reasons for increasing or reducing bail shall " 'contain more than mere findings of ultimate fact or a recitation of the relevant criteria for release on bail; the statement should clearly articulate the basis for the court's utilization of such criteria.' "  (*In re Christie*, *supra*, at p. 1107.)

In the instant action, we are fortunate that the superior court stated its reasons for increasing Avignone's bail.  At the December 20, 2017 hearing, the court stated:

> "I see two people who are facing a lot of time in custody.  Who didn't look at this as being anything other than a probation case. . . .
>
> "I see this being, frankly, a situation where in some respects, Mr. Avignone doesn't have any reason to stick around.  He has his health issues.  He's facing a lot of time in custody.  I think he's a flight risk.  I just -- I'm having a hard time looking at it quite the way that the defense is looking at it.  I think bail needs to be set . . . .  There's a whole new [way of] looking at bail, and I asked a variety of questions to try to get a feel for what might be an appropriate bail having to do with the loss to the victims having to do with money that they've returned having to do with -- and I was appreciative of finding out in terms of their income, but I have no idea how they're going to live.

13

"They don't have any trade.  They're business people and so therefore they ended up developing this business, which turned into a scam that turned into, according to the allegations, something that there was a huge loss in, and they're looking at -- I think the reasonable thing for me to do is look at what the probation officer recommended.  That's a whole lot of time in custody for these people, and they just don't -- that's what they're really looking at now, and therefore I'm going to set bail.

"I was starting at 500,000 because that seems to be logical because of the bail schedule having to do with the huge amount but that's not the only factor that goes into it.  I think that Mr. Avignone's health issues that's significant.  I'm not minimizing it, but I do think that -- that actually in some respects is an aggravating factor and in some aspects is [a] mitigating factor, but he needs to be given credit for all of the times that he has shown up.  So I'm going to set his bail at 300,000."

After the continued bail review hearing on February 14, 2018, the court reiterated why it believed an increase in bail was warranted.  It emphasized that Avignone could persuade others to give him money as part of a new fraudulent scheme.  The court stated that it believed Avignone was a flight risk because he was facing time in custody and his health had improved.  In support of this conclusion, the court noted that Avignone had the ability to leave because he lived in a camper.  The court also expressed concern that, if out on bail, Avignone would be a danger to the public because he would engage in further financial schemes to trick others out of their money.

In addition to the superior court detailing its reasons for increasing bail, the record provides specifics regarding how Avignone performed while out on bail.  Avignone had been out on bail for four years.  It is undisputed that he never missed a court appointment

14

during this time.[9]  In addition, Avignone did not flee during this time.  He did not abscond when the court sentenced him to custody after he pled guilty.  He did not bolt during the pendency of his appeal of his sentence.  He did not vanish after this court determined it was not an abuse of discretion for the superior court to deny Avignone probation.  Further, there is no indication in the record that Avignone engaged in any criminal activity while out on bail.

With this background in mind, we analyze whether the court abused its discretion by increasing Avignone's bail.  The court stated that "the protection of the public [was its] primary" goal in considering the bail issue.  It believed that Avignone would pose a danger to the public if he was out on bail because he would continue to run fraudulent, "get rich quick scheme[s]."  The court observed that Avignone possessed "a very definite gift" — "[t]he power of persuasion."  Further, the court noted that Avignone could convince friends who trusted him to give him large amounts of money to invest.  The court reasoned that, if out on bail, Avignone would need money to support himself; thus, he would convince people to give him money to invest in some fraudulent scheme.  Indeed, the court remarked that Avignone could set up accounts for his ploy on line.

_____

9      We are troubled by the People's representation in their return that:  "Respondent has no reliable information concerning petitioner's bail amount or concerning his performance on bail prior to his previous guilty plea in case number SCD250640, and is therefore unable to admit or deny petitioner's prior bail amount was $100,000 or that he appeared at all required court hearings up to his guilty plea."  At the bail hearing on February 6, 2018, the prosecutor stipulated that the Avignones appeared in court on every occasion they were required to appear while out of custody.  Also, the San Diego Sheriff's Department Inmate Detail Report states that Avignone was released on bond on November 27, 2013 and the bail amount was $100,000.

15

Yet, lacking in the court's explanation is why, after four years out on bail without incident, Avignone would suddenly be a danger to the public. Avignone had the same persuasive ability when his bail was set at $100,000 in 2013. He needed money in 2013 to support himself. There is no indication in the record that Avignone had other avenues by which he could earn income from 2013 to 2017 that were not available to him when the court increased his bail to $300,000. In other words, there is no indication in the record that Avignone would be compelled to break the law now when he had not done so while he was previously out on bail. Put differently, we find no justification in the record, based on his danger to the public, that warranted the court increasing Avignone's bail by $200,000. Simply put, we struggle to understand on what basis the court believed Avignone was more of a danger to the public in 2017 than he was in 2013.

We also have similar concerns with the court's conclusion that Avignone was now a flight risk. As we discuss above, while out on bail, Avignone did not miss a single court appointment. He did not flee when he was sentenced to custody after pleading guilty. He did not abscond while he appealed his sentence. Nor did he leave after we concluded the court did not abuse its discretion in denying probation. The court found a changed circumstance in that Avignone had the potential of a long prison sentence after he withdrew his guilty plea. Yet, the record indicates that Avignone was aware that the charges against him could result in a lengthy prison sentence as opposed to probation.

For example, the probation officer's report, prepared for a January 15, 2016 hearing, recommended that the court deny Avignone probation and sentence him to prison for 11 years. And the court sentenced Avignone to the sheriff's custody for five

16

years four months, but Avignone remained out of custody, on bail, to seek medical treatment.  Thus, Avignone was aware, at least since early 2016, that he faced the possibility of significant prison time.  Moreover, the indictment against Avignone, dated October 30, 2014, contained 10 counts and multiple special allegations raising the possibility of a maximum prison sentence of more than 20 years.

The court also expressed concern that Avignone was living in a camper, which was mobile and he could use it to leave the country.  But this fact was not new or changed.  Before being taking into custody in December 2017, for the three previous years, Avignone had lived on Jordan's property in the camper.  He did not flee during that time.

The People point out other changed circumstances they claim support the court's increase in bail.  They maintain that Avignone was no longer undergoing cancer treatments and Susan also was going to be out of custody; thus, Avignone was more likely to flee.  However, Susan had been out of custody with Avignone previously, and Avignone was not diagnosed with cancer until late 2015.  There is no indication in the record that Avignone tried to leave under these circumstances.  In addition, Avignone was still regularly receiving medical care for fear his cancer would reoccur.

What appears to be the crux of the court's decision below to increase Avignone's bail was the concern that Avignone would engage in a fraudulent scheme and swindle others out of money if he was out of custody.  Indeed, the court emphasized this fact when it discussed whether Avignone was likely to return for future court appearances if he made bail:

17

"The likelihood of conviction I think that goes into whether they are going to return. It's based upon the evidence, based upon the findings of facts that are in the court of appeal decision and it appears that there is a likelihood of conviction if they went to trial. I understand that there's a defense. I'm balancing that, and I feel very strongly that they have the right to go to trial and present everything that they believe mitigates. I think I have successfully avoided using the fact that they entered the guilty plea because I don't think I can do that in this particular assessment that, you know -- *people don't usually enter a guilty plea if, in fact, they're not guilty*, but I have made a very strong effort to take that out of my consideration." (Italics added.)

Although the court states it had "successfully avoided" considering Avignone's previous guilty plea that was withdrawn, we are troubled by the court's statement that people who are not guilty usually do not plead guilty. The fact that Avignone pled guilty seemed to impact the court greatly. It caused the court to discount, if not disregard, the fact that Avignone had been out on bail for four years without incident. He made all court appearances and did not engage in criminal conduct at that time, including refraining from running any fraudulent investment schemes. We struggle to find any basis in the record that would lead the court to determine that Avignone was likely to engage in such criminal activity now if released on bail and then flee after or while engaging in such conduct. The "change" in circumstance that appears to support this conclusion is that Avignone pled guilty, but later withdrew his plea. This is not a changed circumstance, but merely Avignone exercising his rights as we specifically said he could. (See *People v. Avignone*, *supra*, 16 Cal.App.5th at p. 1244.)

18

The superior court's abuse of discretion in increasing Avignone's bail becomes more evident when we consider that the court evaluated Avignone's bail amount under the dictates of *Humphrey*, *supra*, 19 Cal.App.5th 1006, review granted.

In *Humphrey*, the appellate court concluded "[f]ailure to consider a defendant's ability to pay before setting money bail is one aspect of the fundamental requirement that decisions that may result in pretrial detention must be based on factors related to the individual defendant's circumstances." (*Humphrey*, *supra*, 19 Cal.App.5th at p. 1041, review granted.) The court later explained:

> "[U]nquestioning reliance upon the bail schedule without consideration of a defendant's ability to pay, as well as other individualized factors bearing upon his or her dangerousness and/or risk of flight, runs afoul of the requirements of due process for a decision that may result in pretrial detention. Once the trial court determines public and victim safety do not require pretrial detention and a defendant should be admitted to bail, the important financial inquiry is not the amount prescribed by the bail schedule but the amount necessary to secure the defendant's appearance at trial or a court ordered hearing." (*Id*. at p. 1044.)

Among other issues discussed in *Humphrey*, the court in that case made clear that, in considering the amount of bail, a court must examine a defendant's ability to pay. (*Humphrey*, *supra*, 19 Cal.App.5th at p. 1036, review granted ["A determination of ability to pay is critical in the bail context to guard against improper detention based only on financial resources."].)

Here, the superior court explicitly stated that it would analyze the bail issue under *Humphrey*. However, when considering Avignone's ability to pay, the court looked beyond Avignone's available funds (which were meager at best) and considered the

19

charged crimes as a basis for Avignone's financial ability to pay bail. Avignone allegedly ran a fraudulent investment scheme that scammed unwitting investors out of over $700,000. The court found Avignone had the power of persuasion and convinced one individual to invest $355,000. Thus, the court concluded that Avignone's persuasive power would allow him to convince others to pay bail in the amount of $300,000. This conclusion is entirely speculative. It assumes Avignone would be able to run a fraudulent investment scheme while in custody and then use the money he duped others to invest to make bail. In this sense, the court did not properly consider Avignone's ability to pay, but instead, looked at the charged crimes and determined that Avignone would be able to commit like crimes to raise a similar amount of money that he could then use to pay bail. The court offered a hypothetical situation, based on the charged crimes, by which Avignone could hoodwink others to pay his bail. Such analysis is inconsistent with *Humphrey*, *supra*, 19 Cal.App.5th 1006, review granted. Below, the superior court stated it was applying *Humphrey*.[10] It did so improperly.

In summary, we conclude the court abused its discretion by increasing Avignone's bail to $300,000. Avignone was out on bail from 2013 to 2017. During that time, he appeared at every court hearing and did not engage in any criminal activity. He was

---

[10] We acknowledge that our high court granted review of *Humphrey* and that case is now pending before the Supreme Court. Although we find that the superior court did not properly apply *Humphrey*, *supra*, 19 Cal.App.5th 1006, review granted, we need not follow *Humphrey* to conclude the superior court abused its discretion. Further, independent of *Humphrey*, we are concerned about a court setting bail in an amount that constitutes de facto detention. Our trepidation is even more triggered in a situation like the one here, where a defendant's counsel explicitly requests the court to consider the defendant's ability to pay and the court does so improperly.

20

diagnosed with cancer while out on bail and sought medical treatment. During a portion of this time, his wife also was out of custody. For the last three years he was out on bail, he lived in a camper on Sue Jordan's property. He was aware, at least in early 2016, that he faced substantial time in custody for the charged crimes. He pled guilty and was sentenced to five years four months in the custody of the sheriff. He appealed that sentence, arguing the court abused its discretion by denying him probation. This court rejected that contention, but allowed Avignone to withdraw his guilty plea. Avignone withdrew his plea and later appeared at multiple bail review hearings. He never attempted to flee during this time. He did not engage in additional fraudulent investment schemes while out on bail.

In addition, Avignone has ties to San Diego. His daughter, granddaughter, and elderly mother live in San Diego County. He also is continuing to receive medical care in the San Diego area relating to his previous battle with prostate cancer.

Despite this foundation, the court found good cause existed to triple Avignone's bail. The court was concerned that Avignone would engage in additional fraudulent investment schemes if out of custody. Indeed, it assumed Avignone could run such a plot from custody to pay his bail. The court's belief that Avignone would commit additional financial crimes if out on bail also led it to disregard less restrictive means, like GPS tracking, because "GPS . . . doesn't solve the problem of the protection of the community." Further, with scant justification and contrary to Avignone's appearance at all court hearings over the past four years while out on bail, the court determined

21

Avignone was a flight risk.  Finally, the court did not properly consider Avignone's ability to pay when it increased his bail.

Although we realize the abuse of discretion standard is highly deferential, this is the rare case where we conclude the court's decision here was arbitrary, capricious, and resulted in a miscarriage of justice.  On the unique facts before us, the increase of Avignone's bail to $300,000 as a condition of pretrial release is the functional equivalent of a pretrial detention order.  (See *In re Christie*, *supra*, 92 Cal.App.4th at p. 1109 ["the court may neither deny bail nor set it in a sum that is the functional equivalent of no bail"].)  It cannot stand.

DISPOSITION

The superior court's bail determination order of February 14, 2018 is vacated.  The court is directed to reconsider the amount of bail in further proceedings consistent with this opinion.  The opinion shall be final immediately as to this court.  (Cal. Rules of Court, rule 8.387(b)(3)(A).)

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

AARON, J.