Filed 9/23/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>BALTAZAR DIAZ MARTINEZ,<br><br>   Defendant and Appellant. | 2d Crim. No. B303086<br>(Super. Ct. No. 2017032341)<br>(Ventura County)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on August 31, 2020, and certified for publication, be modified as follows:

1. On page 3, last sentence of first partial paragraph ("We conclude that Martinez is entitled to request such relief from the trial court, and remand.") is deleted and replaced with:

We agree, and remand.

2. On page 10, last sentence of first full paragraph ("Martinez must thus be afforded the opportunity to request that

the two one-year prison priors be stricken from his sentence pursuant to S.B. 136.") is deleted and replaced with:

> The two one-year prison priors must be stricken from his sentence. (*People v. Conatser* (2020) 53 Cal.App.5th 1223, 1230.)

3. On pages 10-11, the section entitled "Remedy" is deleted in its entirety.

4. On page 12, the first sentence of the disposition ("The matter is remanded to the trial court for the limited purpose of permitting Martinez the opportunity to request relief pursuant to S.B. 136.") is deleted and replaced with:

> The matter is remanded to the trial court with directions to strike the two one-year sentence enhancements imposed pursuant to section 667.5, subdivision (b), and to resentence Martinez.

This modification changes the judgment. Appellant's petition for rehearing is denied.

_____

TANGEMAN, J.          GILBERT, P. J.          YEGAN, J.

2

Filed 8/31/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BALTAZAR DIAZ MARTINEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B303086<br>(Super. Ct. No. 2017032341)<br>(Ventura County) |

This case involves the intersection of the Criminal Justice Realignment Act and the retroactive application of ameliorative statutes pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). Under the Realignment Act, a trial court has discretion to impose a "split sentence" consisting of a term in county jail followed by a period of mandatory supervision. The court fashions a split sentence by suspending execution of the latter portion of the defendant's sentence and releasing them subject to the probation department's supervision. If the defendant violates the terms of supervision, the court may revoke it and order execution of the suspended portion of the sentence.

The issue presented in this case is whether a defendant is entitled to seek the retroactive benefit of an

ameliorative statute on appeal from an order revoking supervision.[1]  We hold that a split sentence consisting of a county jail term followed by a period of mandatory supervision does not automatically become a final judgment of conviction for purposes of *Estrada* retroactivity when the time to appeal from the imposition of that sentence expires.  Where, as here, the trial court subsequently revokes supervision and the Legislature enacts an ameliorative statute prior to or during the pendency of an appeal from the revocation order, the defendant is entitled to seek relief under the new law.

Baltazar Diaz Martinez pled guilty to unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), identity theft (Pen. Code,[2] § 530.5, subd. (a)), grand theft (§ 487, subd. (a)), and providing a police officer with false information (§ 148.9, subd. (a)), and admitted allegations that he had served three prior prison terms (§ 667.5, subd. (b)).  The trial court struck one of the prison priors and imposed a split sentence of four years eight months, two years of which was based on the two remaining prison priors.  Martinez was to serve the first two years of his sentence in county jail, and the remaining two years eight months on mandatory supervision.

Martinez violated the terms of supervision.  After his second violation, the trial court revoked supervision and ordered

---

[1] The Supreme Court recently granted review in a case presenting a related issue:  when a judgment becomes final for purposes of *Estrada* retroactivity where probation is granted and execution of the sentence is suspended.  (See *People v. Esquivel* (Mar. 26, 2020, B294024) [nonpub. opn.], review granted Aug. 12, 2020, S262551.)

[2] Undesignated statutory references are to the Penal Code.

2

him to serve the remainder of his sentence in county jail.  On appeal from the order revoking supervision, he contends he is entitled to have the two one-year prison priors stricken from his sentence due to a change in the law that occurred after sentencing.  We conclude that Martinez is entitled to request such relief from the trial court, and remand.

FACTUAL AND PROCEDURAL HISTORY

In February 2018, Martinez pled guilty to unlawfully driving or taking a vehicle, identity theft, grand theft, and giving a police officer false information, and admitted allegations that he had served three prior prison terms.  In exchange for his guilty plea, the trial court agreed to impose a split sentence of four years eight months:  two years in county jail, followed by two years eight months of mandatory supervision.  The plea agreement did not state which convictions and enhancements would make up the total sentence.

At the March sentencing hearing, the trial court struck one of the prison priors and sentenced Martinez to the agreed-upon term of four years eight months:  two years for unlawfully driving or taking a vehicle, eight months on the identity theft, and two years on the two remaining prison priors.  Sentences on Martinez's additional convictions were run concurrently.  He did not appeal from the judgment.

In January 2019, the trial court revoked and reinstated mandatory supervision after Martinez admitted that he had violated its terms by getting arrested and failing to report for drug testing.  The court ordered him to serve 120 days in county jail for his violations.

Seven months later, Martinez admitted that he again violated the terms of supervision.  This violation was tied, in

part, to a new case in which Martinez pled guilty to another count of unlawfully driving or taking a vehicle and two more counts of identity theft.  The trial court revoked supervision and ordered Martinez to serve the remaining 514 days of his original sentence in county jail.  It sentenced him to a consecutive two years four months in jail on his new convictions.

DISCUSSION

When the trial court sentenced Martinez in 2018, section 667.5, subdivision (b), required it to add two years to his sentence because of his two prior prison terms.  (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*) [enhancement mandatory unless stricken].)  The Legislature subsequently enacted Senate Bill No. 136 (S.B. 136), which, effective January 1, 2020, limits the applicability of prior prison term sentence enhancements to terms served for sexually violent offenses.  (*Ibid.*)  The provisions of S.B. 136 apply retroactively to cases that are not yet final on appeal.  (*Id.* at pp. 681-682.)

Martinez argues he is entitled to have the enhancements stricken from the sentence imposed in his 2018 case because neither of his prior terms in prison involved a sexually violent offense.  The Attorney General argues Martinez is not entitled to relief because the judgment in his case was final prior to S.B. 136's effective date.  Martinez has the better argument.

*Retroactivity under* Estrada

In *Estrada*, the Supreme Court held that an ameliorative statute will generally apply to all cases that are not final as of its effective date.  (*Estrada*, *supra*, 63 Cal.2d at pp. 744-745.)  *Estrada*'s retroactivity principles apply in a variety of contexts, including to statutory amendments that restrict the

4

applicability of sentence enhancements.  (*Jennings*, *supra*, 42 Cal.App.5th at pp. 681-682.)  "The key date is the date of final judgment."  (*Estrada*, at p. 744.)  "If the amend[ed] statute . . . becomes effective prior to the date the judgment of conviction becomes final[,] then . . . it, and not the old statute in effect when the prohibited act was committed, applies."  (*Ibid*.)

"In criminal actions, the terms 'judgment' and '"sentence"' are generally considered 'synonymous' [citation]." (*People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*).)  There can be "no 'judgment of conviction' without a sentence."  (*Ibid*.) Thus, for purposes of *Estrada* retroactivity, the focus is not on when a conviction becomes final but rather when the sentence imposed on that conviction becomes final.  (*Ibid*.)  A sentence becomes final "when all available means to avoid its effect have been exhausted."  (*Stephens v. Toomey* (1959) 51 Cal.2d 864, 869 (*Stephens*).)  It has not become final "if there still remains some legal means of setting it aside" on direct appeal.  (*Ibid*.) Determining whether such means remain here presents an issue of law for our independent review.  (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183.)

*Split sentences*

In 2011, the Legislature enacted the Realignment Act, which grants a trial court the discretion to either sentence a low-level felony offender to county jail or impose a "'split sentence consisting of county jail followed by a period of mandatory supervision.' [Citation.]" (*People v. Camp* (2015) 233 Cal.App.4th 461, 467; see also *People v. Scott* (2014) 58 Cal.4th 1415, 1418-1419 (*Scott*).)  In the latter scenario, the court suspends execution of the concluding portion of the offender's sentence and releases them into the community under the supervision of the probation

5

department.  (*People v. Avignone* (2017) 16 Cal.App.5th 1233, 1240.)  The period of supervision "is mandatory [and] may not be . . . terminated [early] except by court order."  (§ 1170, subd. (h)(5)(B).)  If the offender is rearrested during that period, any proceeding to revoke or modify the terms of supervision must be conducted pursuant to section 1203.2.  (*Ibid.*; see *Camp*, at p. 469, fn. 9.)  That section permits the court to either release the offender under the same or modified terms, or revoke and terminate supervision.  (§ 1203.2, subd. (a).)  If the court opts for the latter, it must lift the suspension on the execution of the previously pronounced sentence and order it into "full force and effect."  (§ 1203.2, subd. (c).)

Chavez <i>and</i> McKenzie

Given the discretion granted to a trial court by section 1203.2 and related statutes, the Supreme Court has explained that, in the context of probation, a judgment is not "final" when the trial court imposes a sentence but suspends its execution.  (*People v. Chavez* (2018) 4 Cal.5th 771, 781 (*Chavez*).)  Criminal proceedings remain outstanding against the defendant, and the judgment "may or may not become final" depending on what happens during the probationary period.  (*Stephens*, *supra*, 51 Cal.2d at p. 875.)  If the defendant complies with the terms of probation throughout that period, the case may be dismissed and expunged from the record, resulting in no final judgment.  (*Ibid.*; see § 1203.4.)  In contrast, if the defendant violates the terms of probation, probation may "be revoked [and] the judgment may be ordered in full force and effect."  (*Stephens*, at p. 875.)  This range of outcomes exemplifies that a sentence that is imposed and suspended "constitutes 'a judgment provisional or conditional in nature.' [Citation.]"  (*Chavez*, at p. 781.)

6

*McKenzie* illustrates these principles.  In 2014, the *McKenzie* defendant pled guilty to a number of charges, and admitted allegations that he had sustained four prior convictions for drug-related offenses.  (*McKenzie*, *supra*, 9 Cal.5th at p. 43.)  Each of the prior conviction admissions subjected the defendant to a three-year sentence enhancement.  (*Ibid*.)  The trial court suspended imposition of sentence, and placed him on five years of formal probation.  (*Ibid*.)  He did not appeal.  (*Id*. at p. 48.)

Two years later, the trial court revoked probation and imposed a state prison sentence that included the four enhancements for the defendant's prior drug-related convictions.  (*McKenzie*, *supra*, 9 Cal.5th at p. 43.)  While the case was pending on appeal from the revocation order, the Legislature enacted Senate Bill No. 180 (S.B. 180), which rendered the defendant ineligible for the enhancements.  (*Id*. at p. 44.)  The Supreme Court concluded that he was entitled to take advantage of S.B. 180's provisions because his "'"criminal proceeding had not yet reached final disposition in the highest court authorized to review it.'"  [Citation.]"  (*Id*. at p. 45, alterations omitted.)

In reaching that conclusion, the Supreme Court rejected the Attorney General's argument that the 2014 order granting probation "was 'a final judgment for purposes of filing an appeal.'"  (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)  There is a "'substantial and pertinent difference between an order granting probation and a final judgment.'"  (*Id*. at pp. 47-48.)  A criminal action does not terminate "when 'the court orders a grant of probation.'"  (*Id*. at p. 47.)  Rather, a "'criminal action'—and thus the trial court's jurisdiction to impose a final judgment— 'continues into and throughout the period of probation' and expires only 'when the probation period ends.'  [Citation.]"  (*Ibid*.,

7

alterations omitted.)  It is "irrelevant that . . . 'an order granting probation is deemed a "final judgment" for the purpose of taking an appeal.' [Citation.]"  (*Ibid*.)  "'[S]uch an order' has only 'limited finality' and '"does not have the effect of a judgment for other purposes,"'" such as determining whether a new ameliorative statute is retroactive under *Estrada*.  (*Ibid*.)

Though *McKenzie* involved probation, we see no reason to depart from its principles in a case involving mandatory supervision.  Mandatory supervision is "akin to probation." (*People v. Griffis* (2013) 212 Cal.App.4th 956, 963, fn. 2.)  During the supervision period, the defendant is "supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation," including those used to revoke or modify the terms of supervision.  (§ 1170, subd. (h)(5)(B); see §§ 1203.2, 1203.3.)  The applicability of these procedures and the myriad outcomes they permit demonstrate that mandatory supervision, like probation, is conditional or provisional in nature.

That *McKenzie* considered a case where imposition of sentence was suspended, while mandatory supervision involves suspension of the execution of sentence, does not change our conclusion.  *McKenzie* relied heavily on *Chavez*, which explained the differences between the two forms of probation.  The *Chavez* court stated that "[i]n the case where the court suspends execution of sentence, the . . . finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment.'" (*Chavez, supra*, 4 Cal.5th at p. 781.)  Instead, "the grant of probation opens the door to two separate phases for the probationer:  the period of probation and the time thereafter." (*Ibid*.)  During the former, "the court retains the power to revoke

8

probation and sentence the defendant to imprisonment." (*Id*. at p. 782.) If the court exercises that power—as it did in the proceedings below—the judgment then has "full force and effect." (§ 1203.2, subd. (c).) It will become final once the means for setting it aside on direct appeal have been exhausted. (*Stephens*, *supra*, 51 Cal.2d at pp. 869, 875.)

Scott *and* Ramirez

Relying on *Scott*, *supra*, 58 Cal.4th 1415, the Attorney General counters that Martinez's sentence became final when he failed to appeal from the trial court's imposition of a split sentence in 2018. But the Supreme Court rejected an analogous argument in *McKenzie* (*McKenzie*, *supra*, 9 Cal.5th at pp. 46-47), requiring us to do the same here (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *People v. Triggs* (1973) 8 Cal.3d 884, 890-891 [holdings of the Supreme Court "must be applied wherever the facts of a case are not fairly distinguishable from the facts of the case in which [the court has] declared the applicable principle of law"], disapproved on another ground by *People v. Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4). Moreover, the issue in *Scott* was *when* the defendant was sentenced for purposes of the Realignment Act—i.e., when the sentence was originally imposed and suspended, or when the court lifted the suspension and ordered the sentence to be executed—not when that sentence became *final*. (*Scott*, at p. 1421.) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

Nor are we persuaded by the Attorney General's comparison of this case to *People v. Ramirez* (2008) 159 Cal.App.4th 1412. In *Ramirez*, the defendant did not appeal from

9

the trial court's 2004 order that modified the terms of probation, imposed an increased sentence, and suspended its execution pending a period of formal probation. (*Id*. at p. 1421.) In 2006, the court revoked probation, and the defendant appealed, challenging the terms of the 2004 order. (*Ibid*.) Because the defendant could have challenged the 2004 order on direct appeal but chose not to do so, he was estopped from doing so in his appeal from the 2006 order revoking probation. (*Ibid*.)

Here, Martinez has not claimed any error in the trial court's order imposing a split sentence in 2018. "Instead, he raises an issue relating to the [2019] 'revocation of [supervision] and sentencing' [citation], based on an event—the [enactment of S.B. 136]—that occurred long after the court ordered [mandatory supervision] *and* the time for direct appeal lapsed." (*McKenzie*, *supra*, 9 Cal.5th at p. 50, original italics.) He thus "could not have raised this issue [on] appeal from the [supervision] order." (*Ibid*., italics omitted.) "Under these circumstances, [Martinez's] failure to file such a direct appeal does not preclude him from taking advantage of ameliorative amendments that took effect while he was appealing from the subsequent revocation of his [supervision] and [execution] of sentence." (*Ibid*.) Martinez must thus be afforded the opportunity to request that the two one-year prison priors be stricken from his sentence pursuant to S.B. 136.

*Remedy*

Martinez takes a different view, contending he is entitled to have the two one-year enhancements stricken from his sentence while leaving the remainder of the sentence unchanged. We disagree.

S.B. 136 "'does not entitle defendants . . . "to whittle down [their] sentence[s] 'but otherwise leave [their] plea

10

bargains[s] intact.""" (*People v. Stamps* (2020) 9 Cal.5th 685, 706 (*Stamps*).)  If Martinez elects to pursue S.B. 136 relief, the trial court will be able to withdraw its approval of the plea agreement if it cannot fashion a new four year eight month sentence that does not include the stricken enhancements.  (*Id.* at pp. 706-708.)  The prosecutor, too, will be able to withdraw from the agreement if such a sentence cannot be imposed.  (*Id.* at p. 707.)  Or perhaps the prosecutor will "agree to modify the bargain to reflect [Martinez's preferred] downward departure in [his] sentence," and the court will approve the new plea.  (*Ibid.*)

Given these potential outcomes, it is "ultimately [Martinez's] choice whether he wishes to seek relief under [S.B. 136]." (*Stamps*, *supra*, 9 Cal.5th at p. 708.)  While he "has consistently argued on appeal that [S.B. 136] should retroactively apply to him, his argument has always been coupled with his claim that the proper remedy [is] to simply allow the trial court to reduce his sentence by [two years] while otherwise maintaining the remainder of the plea agreement."  (*Ibid.*)  Because we have rejected that claim, Martinez's "calculus in seeking relief under [S.B. 136] may have changed."  (*Ibid.*)  He should now "be allowed to make an informed decision whether to seek relief on remand."  (*Ibid.*)

## DISPOSITION

The matter is remanded to the trial court for the limited purpose of permitting Martinez the opportunity to request relief pursuant to S.B. 136.  In all other respects, the judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

12

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Todd W. Howeth, Public Defender, William Quest, Deputy Public Defender, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.